MULLEN, *Appellant*, v. HEWITT *et al.*

DIVISION TWO.

1. **Judgment:** SCIRE FACIAS: EXECUTION. Under our statute, after the lapse of ten years from its rendition, no *scire facias* can issue to revive a judgment, nor can an execution be issued thereon.

2. ————: FRAUDULENT CONVEYANCES. Where the judgment has become dormant by the lapse of such time, the judgment creditor cannot maintain a suit to set aside fraudulent conveyances of the debtor, without first having brought an action on the judgment and thereby restored its efficacy.

3. ————. A judgment creditor should exhaust his remedies at law before resorting to equity for aid in subjecting the property of the debtor to his debt.

4. **Pleading:** MULTIFARIOUSNESS. A bill against a judgment debtor and the grantees in a number of separate deeds alleging that they were each made to cover up the defendant's interest in the property described therein and to prevent the collection of plaintiff's judgment, but showing no common purpose or design is multifarious and as such demurrable.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED.

On February 15, 1888, appellant filed his petition in the circuit court, city of St. Louis, against Charles Hewitt, M. A. Wolff, F. G. Flanagan, J. H. Douglass, J. W. Grant, J. I. Percy and F. L. Bixler.

" For cause of action plaintiff avers that he with one Lucy Mullen, on sixth day of December, 1877, recovered judgment in the circuit court of the city of St. Louis against defendant Charles Hewitt for $3,878.10 ; that at the February term, 1878, an execution issued on said judgment addressed to sheriff of St. Louis City, against the property of said Charles Hewitt ; that, at the April term thereafter, said execution was returned by said sheriff wholly unsatisfied ; that in May, 1887, a *scire facias* was issued to revive said judgment, and afterwards said judgment was duly revived by the circuit court of the city of St. Louis ; that the said judgment, and every part thereof, still is and remains wholly unsatisfied ; that plaintiff, Alexander J. Mullen, became and is now, for value received, the absolute owner of said judgment.

" Plaintiff further avers that at no time since the rendition of said judgment, nor at the present time, has defendant, Charles Hewitt, owned property in his own name subject to execution, but to all appearances was and is wholly insolvent ; but that as plaintiff is informed and believes, and so states the fact to be, that from some time prior to the rendition of the said judgment defendant, Charles Hewitt, has been the beneficiary of large and valuable real estate in the city of St. Louis, but dealing therein by means of what are commonly known as "kites," that is to say, straw men, who had no interest therein, and other persons who would hold property in secret trust for him, and, by means of sundry false and fraudulent mortgages and representations, lend their aid and assistance to enable said defendant, Charles Hewitt, to cover up, conceal and fraudulently convey his property to hinder and delay this plaintiff in the collection of his judgment.

"And plaintiff avers that in furtherance of this fraudulent scheme, and with full knowledge of said defendant's, Charles Hewitt, indebtedness to plaintiff, and of his ostensible insolvency, and in order to aid him, the said Hewitt, in covering up his property that he might hinder and delay this plaintiff in the collection of his judgment, defendants, Marcus A. Wolff and said Charles Hewitt, on, to-wit, March 21, 1887, purchased from one Giddings a valuable piece of real estate in the city of St. Louis, paying therefor a consideration of about thirty thousand dollars ( $30,000 ); that defendants Wolff and Hewitt caused the same to be conveyed to one James H. Douglass, a mere straw man or kite, who had no interest therein, and whom thereafterwards, and, to-wit, April 1, 1887, they caused to execute a deed of trust on said property, which purports to secure a note of thirty-five thousand dollars ( $35,000 ), no money having ever passed at the inception of said note, and it having been given for no value whatever, but made and executed for the purpose and with the intent of covering up, defrauding, hindering and delaying this plaintiff as aforesaid ; that on said April 7, 1887, the said Wolff and Hewitt also caused said kite, James H. Douglass, to convey the equity in said property to Marcus A. Wolff, defendant; that afterwards, and on, to-wit, May 14, 1887, the said Marcus A. Wolff conveyed the said property to Hon. John W. Noble, who, in consideration therefor, conveyed to Marcus A. Wolff the following described real estate ( here describing it ).

"And plaintiff avers' that defendant, Marcus A. Wolff, holds and received the interest of said Charles Hewitt in said premises, in secret trust for his use and benefit; that the same is no other than and represents the interest of defendant Hewitt in the original investment in the name of the said kite, James H. Douglass ; that plaintiff is unable to state the exact interest of the said defendant Hewitt in said property ; that, since the

conveyance to him, the said Marcus A. Wolff has been collecting the rent, issues and profits from said premises, and does now stand seized of said premises, and of the interest of the said Hewitt therein, in secret trust for his use and benefit, and in furtherance of the said scheme of the said Charles Hewitt to cover up, defraud, hinder and delay this plaintiff in the collection of his said just judgment.

"And plaintiff further avers, that in furtherance of this fraudulent scheme, and with full knowledge of said defendant's, Charles Hewitt, indebtedness to plaintiff, and of his ostensible insolvency, and in order to aid him, the said Hewitt, in covering up his property, that he might hinder and delay this plaintiff in the collection of his judgment, defendant, Francis G. Flanagan, agreed with the said Hewitt, and does now stand seized in secret trust of an undivided one-half interest in the following described property ( here describing it ).

"And plaintiff further avers, that defendant, Charles Hewitt, in conjunction with others, whose names plaintiff is unable to give, and in furtherance of his fraudulent scheme to cover up his property, so that he might hinder and delay this plaintiff in the collection of his just judgment, caused one James Commiskey to convey to defendant, James H. Douglass, who, for no consideration whatever, pretended to convey to defendant, James W. Grant, and who, by a mere sham deed, conveyed to defendant, Franklin L. Bixler, the following described property ( here describing it ). Plaintiff avers that the defendant, Charles Hewitt, is interested in said property, to what extent he is unable to say ; that the said defendant, James Douglass, was a mere kite or straw man, and is now seized in secret trust for the use and benefit of the said Hewitt, in said property, and that if the said James W. Grant conveyed any interest therein whatever to the said defendant Bixler, that the said Bixler is a mere kite or straw man, and stands seized of said property for the interest of the said defendant

Hewitt therein, in secret trust for the use and benefit of the said Hewitt, and in furtherance of his fraudulent scheme to cover up, hinder and delay plaintiff in the collection of his just judgment.

"And plaintiff further avers, that defendant, Charles Hewitt, in conjunction with others, whose names plaintiff is unable to give, and in furtherance of his fraudulent scheme to cover up his property, so that he might hinder and delay this plaintiff in the collection of his just judgment, caused defendant, Marcus A. Wolff, to convey to defendant, James W. Grant, who, by a mere sham deed, conveyed to defendant, Franklin L. Bixler, the following described property ( here describing it).

"Plaintiff avers that defendant, Charles Hewitt, is interested in said property, to what extent he is unable to say ; that defendant, James W. Grant, is a mere kite or straw man, paid nothing for said property, and has no interest therein ; that the said Bixler is a mere kite or straw man, and paid nothing for said property, and has no legal title thereof and the interest of the said defendant, Charles Hewitt, in secret trust for his use and benefit, and in furtherance of his fraudulent scheme to cover up, hinder and delay this plaintiff in the collection of his just judgment.

"And plaintiff further avers, that defendant, Charles Hewitt, in conjunction with others, whose names plaintiff is unable to give, and in furtherance of his fraudulent scheme to cover up his property, so that he might hinder and delay this plaintiff in the collection of his just judgment, caused one Hattie and Edwin O. Stanard to convey to defendant, James W. Grant, the said kite, the following described property ( here describing it).

"Plaintiff avers, that said deed from Stanard to Grant has a nominal or apparent consideration of twenty-nine thousand dollars ( $29,000 ) ; that on the same day of the date of said deed, to-wit, August 23, 1886, the said grantee, James W. Grant, executed a

mortgage on said property to secure a note of twenty-three thousand dollars ($23,000) in favor of defendant, J. I. Percy.    Plaintiff avers, that said property is not worth the sum of $23,000, nor did the persons interested therein pay that sum therefor; that said mortgage is a fraud, and the said J. I. Percy is a kite and a straw man, and that the said mortgage was placed thereon in furtherance of the scheme of the said Charles Hewitt to cover up, hinder and delay the plaintiff in the collection of his judgment; that the said mortgage is now in the possession of or under the control of defendant, Francis G. Flanagan; that defendant, Charles Hewitt, is interested in said property, to what extent plaintiff is unable to say; that said defendant, James W. Grant, has no interest in said property and paid nothing therefor, but stands seized of the legal title thereof and the interest of the said defendant, Charles Hewitt, in secret trust for his use and benefit, and in furtherance of his fraudulent scheme to cover up, hinder and delay this plaintiff in the collection of his just judgment.

"And plaintiff further avers that defendant, Charles Hewitt, has not any property standing in his own name subject to execution, and that the issuance of an execution would be wholly futile and of no avail to plaintiff in an effort to collect said judgment; that said Charles Hewitt has not any other property other than his interest embraced in the above-described real estate, held in secret trust as aforesaid, out of which said judgment can be satisfied in whole or in part, and that, unless the said property can be applied to the payment of said judgment, the same must go unsatisfied.

" Wherefore, plaintiff prays judgment that defendants, Marcus A. Wolff and Francis G. Flanagan, may be compelled to account to this plaintiff for the rents, issues and profits arising out of the interest held in trust by them for the use and benefit of defendant, Charles Hewitt; that the interest in the property of

Charles Hewitt, defendant, held in secret trust by the said several defendants, Marcus A. Wolff, Francis G. Flanagan, James H. Douglass, James W. Grant, J. I. Percy and Frank L. Bixler, may be sold, and the proceeds thereof applied to the plaintiff's judgment; and the plaintiff doth further pray for such order and further orders, judgments and decrees as may be just and proper in the premises."                    •

To which complaint the defendants, Charles Hewitt, Marcus A. Wolff, Francis G. Flanagan, James Douglass, J. I. Percy, demurred, and for grounds of demurrer assigned the following:

*First.* This court, as a court of equity, has no jurisdiction to hear and try the matters and things set out in said petition.

*Second.* It appears from the face of said petition that plaintiff is not entitled to the relief prayed.

*Third.* Said petition does not state facts sufficient to constitute a cause of action.

*Fourth.* It does not appear from said petition that during the ten years succeeding the date of the rendition of said judgment plaintiff and his assignor, both or either of them, diligently availed themselves of all the legal remedies provided by law, by way of execution and proceedings supplemental to judgment against the defendant Hewitt. And it does appear from said petition that by their laches they had lost their right to such remedies prior to the institution of this suit.

*Fifth:* The averment of said petition, to-wit: "Issuance of an execution would be wholly futile to the plaintiff in an effort to collect said judgment," while true, is not made in good faith by plaintiff, for it appears from the averment of said petition that any execution which the plaintiff might cause to be issued on said judgment would be absolutely null and void, more than ten years having passed since the rendition of said judgment.

*Sixth.*   It appears from said petition that plaintiff by laches has lost not only his statutory lien, but also his right to execution against defendant Hewitt, and cannot now ask a court of equity by its process to re-establish such statutory lien, or to supplement the voluntary loss at law of plaintiff's right to execution, by recovering the alleged property of defendant Hewitt, and ordering it sold, by a decree in equity or equitable execution, when even if the said alleged property was already uncovered and said Hewitt had property standing in his own name, plaintiff could not in either case have it levied upon to satisfy plaintiff's alleged judgment.

*Seventh.*   Plaintiff's petition does not present a case in which plaintiff has an existing right to execution, which right and remedy is made ineffectual by the alleged fraudulent acts of defendants, but presents a case in which plaintiff's right and remedy by execution has by plaintiff's laches been lost, and cannot be availed of to satisfy plaintiff's alleged judgment, even if the court should recover alleged property of said Hewitt.

*Eighth.*   The said petition is multifarious, in that it seeks to charge the several defendants herein with separate and distinct acts, with reference to separate, distinct pieces of realty, and does not charge that all the defendants and properties were joined or embraced in one and the same general scheme of alleged fraud, or that the alleged individual separate fraudulent acts were participated in by each of defendants as a part of one scheme of alleged fraud.

*Ninth.*   With the exception of the alleged purchase of said property from one Giddings, it does not appear that said Hewitt paid any money, or contributed anything to or any part of the purchase price of any of the property described in said petition, or, for a consideration, even acquired any right, title or interest in the same.   And, with reference to the property acquired

from said Giddings, said petition does not state whether said M. A. Wolff, or said Hewitt, paid the purchase price, or how much each paid.

Nor does said petition state by what names said Hewitt "caused" said E. O. Stanard and others to make said alleged "transfers of realty."

Which demurrer the court sustained, and plaintiff declined to plead further; thereupon judgment was entered for defendants, to reverse which the plaintiff appeals to this court.

*R. M. Nichols* for appellant.

(1) A creditor's bill can be maintained upon a judgment of more than ten years' standing. Pomeroy's Equity, sec. 1514; *Ewing v. Taylor*, 70 Mo. 394; *Roan v. Winn*, 93 Mo. 512; *Lyons v. Murray*, 95 Mo. 23; *Meyer v. Mehrhoff*, 19 Mo. App. 682. *First.* Because the judgment is *res adjudicata* as to the claim, its amount and merits. Freeman on Judgments, sec. 435; *Townsend v. Cox*, 45 Mo. 401. *Second.* Because in the language of this court, stated as a prerequisite to the right, "The judgment reduces the creditor's claim to a certainty, shows that he is in fact a creditor." *Merry v. Fremon*, 44 Mo. 520, *Alnutt v. Leper*, 48 Mo. 321. *Third.* Because to maintain the bill a judgment lien is unnecessary. *Merry v. Freeman*, 44 Mo. 518. *Fourth.* Because to maintain the bill the right to issue execution not a prerequisite. *Roan v. Winn*, 93 Mo. 512. *Fifth.* Because in a proceeding to reach equitable assets an execution is of no practicable utility. A court of equity can assert its power without the aid of an execution. *Lionberger v. Baker*, 88 Mo. 456. *Sixth.* Because the lien given as an incident to the judgment of revival in May, 1887, without the right of execution. Consequently, appellant has no adequate and complete remedy at law. 1 Pomeroy's Equity, pp. 216, *et seq.;* *Lyons v. Murray*, 95 Mo. 23. (2) The court has

exclusive jurisdiction over the secret trusts admitted by the demurrer and averred in the petition. (3) The court has concurrent jurisdiction over the fraud averred in the petition and admitted by demurrer. (4) The court has concurrent jurisdiction of the case made in the petition, by reason of having jurisdiction over the incident of fraud and trust. 1 Pomeroy Eq., p. 239, *et seq.* (5) The court has concurrent jurisdiction to prevent multiplicity of suits, or in this case, under the special power, to prevent circuity of action. 1 Pomeroy, Eq., p. 254, *et seq.* (6) The bill is not multifarious. Bliss on Code Pleading, sec. 110; *Bobb v. Bobb*, 76 Mo. 419. (7) A court of equity on appeal can accord to the party that relief which he should have received at the hands of the trial court. *Darrier v. Darrier*, 58 Mo. 234; *Jones v. Hart*, 60 Mo. 351; *Ringo v. Richardson*, 53 Mo. 397.

*Hiram J. Grover* for respondents.

(1) Courts of equity are not ordinarily tribunals for the "collection of debts." Some special reason must be offered by the creditor before they will extend aid to him. *Fleming v. Grafton*, 54 Miss. 375; *Dunlevy v. Talmage*, 32 N. Y. 459. (2) The suit in equity is said to be an "ancillary" relief in aid of the legal remedy, since a court of equity does not intervene to "enforce the payment of debts." (3) "A court of equity exercises its jurisdiction in favor of a judgment creditor only when the legal remedy afforded him at law is ineffectual to reach the property of the debtor, or the enforcement of the legal remedy is obstructed by some incumbrance upon the debtor's property, or some fraudulent transfer of it." *Jones v. Green*, 1 Wallace, 331–332. Executions can only issue upon a judgment within ten years after its rendition. R. S. 1879, sec. 2739; *George v. Middaugh*, 62 Mo. 551. (4) The existence, validity and extent of a judgment lien are

matters purely legal, dependent upon statutory provis-
ions.   If it fail at law, it cannot be aided in equity.
*Douglas v. Houston*, 6 Ohio, 162.   (5)   It is well set-
tled that a bill filed to remove fraudulent obstruction
must show that such removal will enable the judgment
to attach upon the property.   *Spring v. Short*, 90 N. Y.
538 ; 8 Wait's Act. & Def., p. 202.   If the removal of
the fraudulent obstruction will not have that effect the
creditor's suit will not be maintained.   *Lichtenburg
v. Herdefelder*, 4 Cen. Rep. 387 and 389 ; 103 N. Y.
(6)   Where the right to have an execution still exists
the judgment creditor can maintain his bill to remove
fraudulent obstructions.   *Merry v. Fremon*, 44 Mo.
520 ; *Zoll v. Soper*, 75 Mo. 462 ; *Lionberger v. Baker*, 88
Mo. 455.   As shown by the last case cited, the right to
the execution is essential.   (7)   The bill is multifa-
rious.   *Clark v. Ins. Co.*, 52 Mo. 272 ; *Mayberry v.
McClurg*, 51 Mo. 256.

GANTT, P. J.—The only question to be determined
in this case is the sufficiency of the petition.   The cir-
cuit court sustained a demurrer, and plaintiff has brought
the case here.

The purpose of the bill in this case, succinctly
stated, is to collect a dormant judgment by a decree in
equity, without reviving the judgment or being entitled
to an execution.

The bill on its face discloses that the judgment it
seeks to collect was rendered December 6, 1877, against
Charles Hewitt for $3,878.10, and this action was not
commenced until February 15, 1888.   The only legal
step ever taken to collect this judgment was the issuance
of an execution at the February term, 1878, which was
returned at the April term, 1878, of the circuit court of
the city of St. Louis, unsatisfied.   So that, at the com-
mencement of this suit, plaintiff had no judgment upon
which he could issue an execution at law ; but he asked the
court to compel Marcus Wolff and Francis Flanagan to

account to plaintiff for certain rents, alleged to be the property of Hewitt, and that Hewitt's interest in the lands might be sold.

It is a general rule that a creditor, before obtaining a judgment and execution, has no certain claim upon the property of his debtor and has no concern with conveyances of any kind affecting their property, for the very good reason that he may never obtain a judgment, and if he does not he cannot be injured by any disposition of the property. *Crim v. Walker*, 79 Mo. 335 ; *Fisher v. Tallman*, 74 Mo. 39, and cases cited. "And before resorting to chancery, a creditor must first exhaust his legal remedies, whatever they may be. In doing so he may create a lien upon the property sought to be subjected." *Merry v. Fremon*, 44 Mo. 518.

Both of these propositions are admitted by the appellant, but he maintains that his judgment, *though dormant*, is still a judgment, because it is "*res adjudicata*" as to its claim, its amount and merits, and that his right to the aid of chancery does not depend, either upon his having a lien, or the right to issue an execution.

That all defenses prior to the obtaining of plaintiff's judgment would be merged, should he bring an action on his judgment at any time before it is barred by the twenty years' prescription, is true. But after ten years, under our statute, no *scire facias* can issue to revive it, nor can an execution be issued upon it. How much better is the attitude of the holder of such a judgment than any other general creditor of the defendant.

We have not found the precise case in the judicial history of this state, but the case of *Crim v. Walker*, 79 Mo. 335, presents a strong analogy. In that case plaintiff had obtained judgment against Madison Walker, in Indiana. Upon that judgment suit was brought in Jasper county, Missouri, against said Walker. There were two counts in petition, the first to obtain judgment on the Indiana judgment in Missouri, the second, to set

aside certain conveyances made by Walker as fraudulent. This court held that the plaintiff had no standing, until he obtained a new judgment in this state, to question the fraudulent character of the conveyances made by Walker. In that case, by the constitution of the United States, full faith and credit was given to the judgment, but it did not bring with it into this state the efficiency of the judgment upon property or upon persons to be enforced by execution. To give it that force it must be made a judgment here. So it was held by the United States circuit court for the southern district of New York in *Claflin v. McDermott*, 12 Fed. Rep. 375, that a judgment creditor, who had obtained judgment in California, could not invoke the aid of the federal court in New York to enforce his claim, until he had brought his action anew and obtained a judgment in New York.

To the same effect is *Walser v. Seligman*, 13 Fed. Rep. 415. In all these cases and many others cited by them, the judgment definitely settled that plaintiff was a creditor, but his rights were in no sense superior to a general creditor, when he sought to interfere with the disposition of defendant's property. In other words, the judgments were without that sanction which would render them operative, and in this respect they are in all respects similar to the judgment declared on in this case. That it was once determined judicially that plaintiff was a creditor of defendant Hewitt is unquestioned, but plaintiff has slept upon his rights until his judgment has lost its vitality and efficacy, and nothing but a new action will restore it and place plaintiff in a position to question the conveyances and dispositions of property by defendant. Until then these matters do not concern him.

Seeing that plaintiff has no judgment upon which he can stand we might stop here. But plaintiff has not pursued his legal remedies. The issuing of one execution ten years ago is not that diligence that will be exacted at his hands. He can sue on this judgment and

renew it, take out his execution, levy upon any legal or equitable interest defendant Hewitt may have in the real estate, and then, if fraudulent obstructions are placed in his way, he may with confidence call upon the courts of equity for assistance, but until then he cannot be said to have exhausted his legal remedies.

As to the other ground of demurrer, that the bill is multifarious, we think that also well taken. There is no such common purpose or design alleged as will justify the holding of one set of these defendants in court while plaintiff is litigating with others over matters in which they are not even charged with any complicity. Our statute is liberal, but it will not authorize the indiscriminate blending of actions in which the defendants are not the same, and have no common interest with the plaintiff or each other. The petition in *Bobb v. Bobb*, 76 Mo. 419, is no justification for this bill.

The circuit court properly sustained the demurrer, and its judgment is affirmed. All the judges of this division concur.