### MELLIER v. BARTLETT *et al., Appellants.*

DIVISION TWO.

1. **Practice in Supreme Court:** EQUITY FINDINGS. Where error has been committed by the trial court in its finding of facts in an equity case, the supreme court will review and correct it.

2. **Fraudulent Conveyance:** SHERIFF'S SALE : PURCHASE BY SON-IN-LAW OF DEBTOR. A son-in-law may purchase his insolvent father-in-law's land at a sheriff's sale, even though the title to the same was held in the name of the wife of the debtor in fraud of his creditors, and he may so purchase in good faith with his own funds for the benefit of his mother-in-law.

3.   **Judgment Lien**: EXPIRATION OF: ACTION ON JUDGMENT: JURY TRIAL. Where a creditor permits his judgment lien to expire and the time to elapse within which the judgment could be revived by a *scire facias*, such judgment becomes an ordinary cause of action, on the trial of which defendant is entitled to a jury. (*Affirming Mullen v. Hewitt*, 103 Mo. 639.)

4.   ———: ———. Such creditor, having permitted his judgment to expire, cannot maintain a suit in equity to subject to the payment of his debt property claimed to have been conveyed in fraud of creditors.

5.   ———: ———: ATTACHMENT. The proper remedy in such case would be an action at law on the judgment with attachment process.

*Appeal from Butler Circuit Court.*

REVERSED.

*S. M. Chapman* for appellants, G. T. and Mary M. Bartlett.

(1) Plaintiff has attempted to blend in one count a legal and equitable cause of action; one to obtain a money judgment, the other to set aside certain conveyances alleged to have been fraudulent. This he cannot do. While legal and equitable causes may be united in the same petition, each cause of action must be separately stated with the relief sought. R. S. 1889, sec. 2040; *McCoy v. Yager*, 34 Mo. 134; *Henderson v. Dickey*, 50 Mo. 161; *Scott v. Robards*, 67 Mo. 289. (2) Before plaintiff can have a standing in equity to assail alleged fraudulent conveyances, he must have a subsisting judgment capable of being enforced against the property alleged to have been so conveyed, except for the conveyances complained of. *Crim v. Walker*, 79 Mo. 335; *McElwain v. Mills*, 9 Wend. (N. Y.) 548; *Massey v. Grotton*, 12 Minn. 145; *Dunlevy v. Tallmadge*, 32 N. Y. 457, 463; Wait on Fraudulent Conveyances, sec. 73; *Jones v. Green*, 1 Wall. (U. S.) 330. (3) To entitle a creditor to the relief sought in this

form of action, plaintiff must establish that he has a valid and subsisting judgment capable of being enforced against the property sought to be charged. And that he has exhausted his remedy at law in an effort to collect his judgment, the best evidence of which is the return of an execution *nulla bona*. While there may be cases in which it has been held that a return of *nulla bona* is not essential to jurisdiction to assail alleged fraudulent conveyances, the creditor is always required to have a judgment creating a lien, or capable of being enforced by execution. Cases cited, *supra; Brinkerhoff v. Brown*, 4 Johns. Ch. (N. Y.) 671; *McDermott v. Strong*, 4 Johns. Ch. 687; *Hendricks v. Robinson*, 2 Johns. Ch. 234; Bump on Fraudulent Conveyances, 511; *Turner v. Short*, 4 S. W. Rep. 347; *Crippin v. Hudson*, 13 N. Y. 161; Story, Equity Jr., secs. 1216*a*, 1216*b; Merry v. Freeman*, 44 Mo. 518. (4) Plaintiff's judgment having become dormant by lapse of time, more than ten years having elapsed between its rendition and the commencement of this suit, he must resort to the same avenues to enforce his claim as other creditors. He can neither sue out execution nor revive his judgment by *scire facias*, but it simply forms a basis for suit like any other indebtedness. R. S. 1889, secs. 6013, 6020; *Rollins v. McIntyre*, 87 Mo. 507; *George v. Middough*, 62 Mo. 549; *Burton v. Deleplain*, 25 Mo. App. 376; *Hockaday v. Lawther*, 17 Mo. App. 636. (5) There is nothing tending to establish bad faith or fraud on the part of anyone in the conveyance from Gardner to Mrs. Bartlett, or by the sheriff to Quinn, or that any creditor of the doctor's suffered, or could suffer, by reason of those conveyances; and courts will not presume fraud without proof, and, where a transaction is as consistent with honesty and fair dealing as with fraud and dishonesty, the presumption is in favor of honesty and fair dealing. *Dallam v. Parr*, 26 Mo. 533; *Chapman v. McIlwrath*, 77 Mo. 38; *Webb v. Darby*, 94 Mo. 621; *Henderson v.

*Henderson*, 55 Mo. 555; Wharton on Evidence, secs. 366, 1248, 1249.

*L. D. Grove* for appellant Quinn.

The evidence does not show fraud and is insufficient to support the decree. Fraud must be proved not conjectured. *Priest v. Way*, 87 Mo. 16. Besides, the finding should conform to issues made by the pleadings. *Newman v. Kenton*, 79 Mo. 382.

*W. H. Clopton* for respondent.

(1) The petition does not blend two causes of action. *Paddock v. Somes*, 102 Mo. 226; *Woodworth v. Tanner*, 94 Mo. 124; *Luthy v. Woods*, 1 Mo. App. 169. (2) A judgment that will support an execution is not always necessary to a creditor's bill. *Pendleton v. Perkins*, 49 Mo. 565; *Roan v. Winn*, 93 Mo. 512; *Turner v. Adams*, 46 Mo. 99. (3) Equity never requires a vain thing. *Bank v. Kellogg*, 52 Mo. 591; *Shickle v. Watts*, 94 Mo. 427; *Walker v. Deaver*, 79 Mo. 674; *Luthy v. Woods*, 1 Mo. App. 169; *Dryden v. Kellogg*, 2 Mo. App. 95. (4) To avoid circuity of action is one of the distinct grounds of original jurisdiction in courts of equity. *Evans v. Railroad*, 64 Mo. 246; *Biddle v. Ramsey*, 52 Mo. 153. (5) Equity jurisdiction will not be ousted, though there is an apparently adequate remedy at law. *Pratt v. Clark*, 57 Mo. 189; *Paris v. Haley*, 61 Mo. 453. The remedy at law must be plain, adequate and complete to oust equity. *Biddle v. Ramsey, supra*. (6) A court of equity will grant relief, notwithstanding the existence of a remedy at law, unless the defendant pleads the remedy at law in defense of the equitable suit. *Blair v. Railroad*, 89 Mo. 383; *Shickle v. Watts*, 94 Mo. 419. (7) Equity takes jurisdiction of cases of fraud, even though there is a concurrent remedy at law. *Nelson v. Betts*, 21 Mo. App. 219.

GANTT, P. J.—On the fourth day of September, 1886, Augustus A. Mellier, of St. Louis, commenced this action in the circuit court of Butler county, Missouri, against the defendants, George T. Bartlett, Mary M., his wife, and Luke F. Quinn. The writ was returnable to the November term, 1886 ; the cause was heard by the judge as a chancellor, and a decree rendered for plaintiff, February 23, 1888, and from that decree, the defendants appeal.

The petition is as follows.

"Plaintiff states that on the sixth day of April, 1875, he obtained judgment against the defendant, George T. Bartlett, for the sum of $395.37 on an accepted draft, dated September 6, 1874, due in thirty days thereafter ; that he caused an execution to be issued on said judgment returnable to the June term, 1875, and delivered to the sheriff of Butler county, Missouri ; that said execution was in due time returned to the court by said sheriff, which return showed that said defendant had no goods or chattels in his county out of which said execution could be satisfied.

" Plaintiff says that afterwards, to-wit, on the thirtieth day of October, 1882, defendant, George T. Bartlett, acquired property in the county of Butler, hereinafter described, subject to execution on said judgment, and plaintiff caused another execution to be issued on said judgment, and placed in the hands of the sheriff of said county of Butler ; that said execution was by said sheriff levied on the following described real estate in the town of Poplar Bluff, county of Butler, state of Missouri, as the property of said defendant, George T. Bartlett, to-wit, the west half of lot 25 per the recorded plat of the town of Poplar Bluff, containing one quarter of an acre of ground, and bounded north by Oak street, easterly by the east half of said lot, south by lot number 26, and westerly by Fourth street; that said property was advertised by the said

sheriff under said execution for sale on the twenty-second day of January, 1884; that on the twentieth day of January, said defendant, George T. Bartlett, pleaded his motion to quash said execution and to restrain said sheriff from selling said property, which said motion was by the circuit court of this county sustained before the hour of sale, and said real estate was not sold to satisfy said judgment.

"Plaintiff says that in due time and by proper proceedings he appealed from said judgment and order of this court to the supreme court of the state, and that said order and judgment of the circuit court was on the —— day of —— 1886, being at the April term, 1886, of the supreme court, reversed and held for naught; plaintiff says that said George T. Bartlett is still the owner of said real estate; that the same was acquired by the said George T. Bartlett from Thomas Gardner on the thirtieth day of October, 1882; that the said George T. Bartlett then, and is now, deeply indebted to a number of parties; that he was then, and now is, insolvent and has no other property out of which an execution can be satisfied; that when said George T. Bartlett acquired said property he caused the same to be conveyed to defendant, Mary M. Bartlett, his wife, for the purpose of hindering, delaying and defrauding his creditors, and especially the plaintiff; that the said Mary M. Bartlett paid no part of the consideration money for said property, but all of the same was paid by the defendant, George T. Bartlett; that on the eighth day of November, 1881, R. O. Edwards, administrator *de bonis non* of the estate of Shelton H. Shrout, deceased, in this circuit court, obtained judgment against George T. Bartlett and others; that execution was issued thereon, and levied on the property hereinbefore described as the property of George T. Bartlett; that said property was sold by the sheriff of this county under said execution on November 6, 1885, and defendant, George T. Bartlett, acting by and through defendant, L. F. Quinn, was the highest bidder at said sale;

that the sheriff of said county made a deed on the said sixth day of November, 1885, conveying said property to Luke F. Quinn at and for the price of $417; that said Quinn now holds said title so acquired in secret trust for said George T. Bartlett.

"That the said George T. Bartlett paid such purchase money, to-wit, said $417; that said Luke F. Quinn and George T. Bartlett caused said title to be conveyed by the sheriff to said Quinn in furtherance of the aforesaid design of said George T. Bartlett to hinder, delay and defraud the creditors of said Bartlett, and especially plaintiff.

"Plaintiff, therefore, prays that he may have judgment against said defendant, George T. Bartlett, for the sum of $395.37, his debt, with interest thereon from the date of said judgment, to-wit, April 6, 1875, and for costs by plaintiff expended and paid, to-wit, the sum of $16.15 and costs of court.

"That the defendant, Luke F. Quinn, be declared a trustee, holding said real estate for said defendant, George T. Bartlett; that the interest of the said defendant, Mary M. Bartlett, be divested from her, and that the same be vested in defendant, George T. Bartlett, and that the said property, or as much thereof as may be necessary, be held to satisfy the claim of plaintiff, and for such other and further relief as to this honorable court may seem proper."

To this petition a demurrer was opposed, for the reason that it did not state facts sufficient to constitute a cause of action in equity. The demurrer was overruled, and defendants answered over, denying all the allegations of the petition. The circuit court tried the cause without a jury, holding that it was a proper case for a chancellor. On the trial the evidence for the plaintiff disclosed that the defendant, George T. Bartlett, was financially embarrassed. As stated in the petition, it appeared that on the sixth of April, 1875, Augustus Mellier, of St. Louis, obtained a judgment against

George T. Bartlett for $395.37. On this judgment an execution was issued to Butler county in 1875, and returned "No goods found."

No further steps were then taken till 1884, when another execution was sued out, and the homestead, in which Bartlett and his wife resided in Poplar Bluff, was levied on. On the motion or petition of Bartlett, the circuit court of Butler county quashed that levy. Mellier appealed to this court, and in *Mellier v. Bartlett*, 89 Mo. 135, the action of the circuit court was reversed. In the meantime, Mellier had taken no step to revive his judgment, and the ten years within which he could revive it by *scire facias* expired.

Augustus Mellier then commenced this action in equity. Bartlett was shown by the evidence to have been a resident of Butler county during all this time. It further appeared from the evidence that, from 1878 to 1882, there was cross-litigation between Bartlett and Thomas Gardner, and two judgments were rendered. In one case Gardner recovered the property now in dispute, and in the other Bartlett obtained a decree permitting him to redeem said property upon paying Gardner some $5,000. On the twenty-eighth of October, 1882, these suits were amicably arranged, and it was agreed that Gardner would convey this property to Mrs. Mary M. Bartlett, the wife of George T. Bartlett, for $2,500. As a part of that settlement it was agreed Gardner would take Bartlett's two notes secured by the indorsement of Ed. and Luke Quinn, payable in thirty and sixty days, for $1,500. In pursuance of this agreement, Ed. and Luke F. Quinn paid these two notes, and Gardner and wife on the thirtieth day of October, 1882, made a general warranty deed to this lot to Mrs. Bartlett. On the seventeenth day of April, 1885, John G. Wear, administrator *de bonis non* of Shelton Shrout, sued out an execution against defendant, George T. Bartlett, *et al.*, on a judgment obtained November 8, 1881, in the Butler circuit court, for $460.04,

and caused the same to be levied on this house and lot in suit as the property of George T. Bartlett.

On June 11, 1885, the sheriff made public sale of this property at the courthouse door, and at that sale Luke Quinn, Mrs. Bartlett's son-in-law, bought it, paying the full amount of the judgment and costs. We have read the testimony, and we fail to find in it any evidence, worthy the name, that shows that Quinn in making this purchase used one dollar of George T. Bartlett's money, or that there was any agreement between Bartlett and Quinn that Quinn should buy it with Bartlett's money and take the title to Quinn. On the contrary it does appear that Bartlett made an ineffectual effort to borrow the amount of the judgment from Mr. Chapman, his attorney, and, failing, Quinn bought it, he says, in order that his mother-in-law, with whom he had lived a number of years, might have a home. We are not unmindful of the rule that has prevailed in this court for many years, of deferring to the judgment of the trial courts. We still think it a most salutary rule, but we do not understand that rule to deprive this court of its proper appellate jurisdiction in chancery cases. Carried too far, it would amount to a denial of an appeal in equity causes. We think that in an appeal like this the record presents a case for our determination, and if from a careful consideration, in our judgment, error has been committed, it is our duty to correct it. Hence in this case, unless we are to hold that a son-in-law may not lawfully purchase the land of his father-in-law, at a public sheriff's sale, and take the title, even if his father-in-law was guilty of fraud in holding the title in his wife's name, we must reverse this case. For let us concede that Mrs. Bartlett held this house and lot as trustee for the creditors of Dr. Bartlett, and that Judge Wear as administrator of Shrout had a perfect right to subject it to his execution, when that sale was made, the purchaser took all the interest and estate of George T. Bartlett discharged

from all junior judgments and liens. At that time, plaintiff had no lien. His judgment had been obtained in 1875, and the lien never revived. It is certainly going very far to say that a son-in-law may not in good faith purchase a home for a mother-in-law whose husband is insolvent. While these family settlements generally excite suspicion, and a chancellor is justified in scrutinizing them closely and indulging often in adverse presumptions on account of the difficulties in obtaining the truth, yet when all the evidence shows that the father-in-law, as in this case, was insolvent, and the bill proceeds on that theory, and all his earnings are barely enough to support his family, and the evidence affirmatively shows the son-in-law furnished the funds with which to purchase the home, no court is justified in presuming a case. Something more than mere relationship must be shown.

We hold that if a stranger had purchased this lot under Judge Wear's execution, he would have taken it discharged from any mere general indebtedness of Dr. Bartlett; that it would have conveyed to him all of Bartlett's interest, and the evidence in this case does not place Luke Quinn at any greater disadvantage than any other purchaser at a fair public sale. The only ground for relief was that Bartlett furnished the money, and the proof does not sustain it. On the merits of this case, we think the court should have dismissed the bill of plaintiff.

In the trial court, the defendants insisted that there was no equity in plaintiff's petition; that the bill, on its face, disclosed that plaintiff had no judgment that was, or could be, a lien on the property sought to be charged. Learned counsel for respondent admits in his brief, that if the judgment of this court in *Mullen v. Hewitt*, 103 Mo. 639, is not overruled, that his judgment cannot stand, and urges upon us to overrule that decision. The opinion in that case was prepared, after a careful review of all the authorities in

this state.  We held there that, where a creditor permitted his judgment to lapse, so that it was neither a lien nor would support an execution, and suffered the time to expire within which it could be revived by *scire facias*, that he stood in no better position than a mere general creditor; that his judgment had lost its efficacy and vitality.  We have seen nothing to change our views of the law in this case.  When the plaintiff suffered the time within which his judgment could be revived by *scire facias* to lapse, his judgment became a mere cause of action.  It lost many, if not all, the essentials that characterize a judgment.  He virtually confesses this in his petition in this case, by praying the chancellor to award him a new judgment.  If this was a judgment, why obtain another?  We hold that when he instituted suit on this judgment, after ten years, that the defendants had the right to a jury trial. They might have shown this judgment was paid, and were entitled to a jury on that issue.  They could also have put in issue Walter Mellier's title 'to the said judgment under the assignment.  Since the decision in this court of *Mullen v. Hewitt, supra*, the supreme court of the United States has reviewed this same question in *Scott v. Neely*, 11 Sup. Ct. Rep. 27, p. 712. Judge FIELD says: "In all *cases* where a court of equity interferes to aid the enforcement of a remedy at law, there must be an acknowledged debt, or one established by a judgment rendered, accompanied *by a right to the appropriation of the property of the debtor for its payment*, or, to speak with greater accuracy, there must be, in addition to such acknowledged or established debt, an interest in the property *or a lien thereon created by contract or by some distinct legal proceeding.  Smith v. Railroad*, 99 U. S. 398, 401; *Jones v. Green*, 1 Wall. 330 ; *Wiggins v. Armstrong*, 2 Johns. Ch. 144.

"In *Wiggins v. Armstrong*, Chancellor KENT held that a creditor at large, or before judgment, was not

entitled to the interference of a court of equity by injunction to prevent the debtor from disposing of his property in fraud of his creditor, citing some of the above authorities and stating that the reason of the rule seemed to be that until the creditor had established his title he had no right to interfere, and it would lead to unnecessary and perhaps a *fruitless and oppressive interruption of the debtor's rights*, adding '*unless he has a certain claim upon the property of the debtor, he has no concern with his frauds.*' It is the existence, before the suit in equity is instituted, of a lien upon or interest in the property created by contract or by contribution to its value by labor or material, or by judicial proceedings had, which distinguishes cases for the enforcement of such lien or interest from the case at bar. Upon the contention of the complainants, it is not perceived why all actions at law, even for injuries to persons or property, may not be withdrawn by the state from a court of law to a court of equity by allowing a lien upon the property of the defendants on the issue or process at the commencement of the action, and authorizing the court to direct a sale of the whole or a portion thereof in its discretion, to pay the damages recovered." Accordingly, the court held that, when there was a plain, adequate remedy at law, it would not entertain jurisdiction in equity.

The case of *Luthy v. Woods*, 1 Mo. App. 167, to which counsel invites our attention is clearly distinguishable from the case at bar. The fund against which plaintiff proceeded there was in the hands of the St. Louis school board, and was not subject to garnishment either under attachment or execution. No such difficulty is in plaintiff's way here. No excuse whatever is shown why plaintiff did not keep the lien of his judgment alive from time to time. Knowing the condition of the docket of this court, at the time of his appeal from Judge OWEN's judgment, quashing his execution, he could easily anticipate that his judgment would expire

before that case could be reached, and ordinary pru-
dence would have dictated that he revive his judgment
and its lien, so as to place him in a position entitling him
to question the disposition of Bartlett's property. It
occurs to us that our attachment law which requires the
execution of a bond conditioned that the plaintiff
shall prosecute his action without delay and with effect,
refund all sums of money that may be adjudged to be
refunded to the defendant, and pay all damages and
costs that may accrue to the defendants by reason of the
attachment, will be useless, if a plaintiff may, without
giving such an indemnity bond, pass by the courts of
law, by simply praying that the judgment he seeks
may be made a lien upon some specific property of the
defendant, on which he confessedly has no lien by vir-
tue of any contract, nor as the result of any statute.

Take this case ; suppose Dr. Bartlett held the title
to this lot in his own name at the time plaintiff's action
was commenced. Plaintiff had no lien on it by contract ;
the only way for him then to acquire a lien on it was to
obtain a judgment. To get that judgment he must
bring an action, which defendants had the right to
defend. The court in which it was brought would have
no right to assume plaintiff would recover a judgment.
Suppose then Bartlett had concluded to sell this prop-
erty to an innocent purchaser, would a court of equity
have interfered to restrain him, and, if it would not
enjoin him, would it tolerate the tying it up without
any security until the litigation ended, by a mere *lis
pendens?* We think most clearly not. Suppose in the
end, Bartlett should defeat the plaintiff by proving he
had no title to A. A. Mellier's judgment, or that he had
paid it, what redress would Bartlett have, if he had lost
a sale, or been damaged otherwise ? We venture the
opinion that no well-considered case in this state has
ever gone this far.

Until Mellier obtained a judgment that would justify
him in inquiring into the domestic affairs of Bartlett, it

was wholly immaterial to him whether Bartlett held the title to this lot in his own name or in that of his wife. When armed with a judgment, he might properly scrutinize that transaction, and show it was Bartlett's property and subject to his execution, but not till then.

Nothing we have said here in any way militates against those cases which are cognizable in equity alone. But in this case plaintiff could have brought an action to obtain a judgment, sued out his attachment, sold the property at a sheriff's sale, become the purchaser if he desired. His attachment would have held the property *in statu quo*, till he had time to inquire whether Mrs. Bartlett, or Quinn was the owner. We think the rule too well established as a rule of practice and right to attempt any innovation. We know of but one case where such a proceeding is allowed in our practice, in advance of a judgment, and that is by virtue of the attachment law. R. S. 1889, sec. 571. In that case, the plaintiff has acquired by the levy of his writ of attachment a *statutory lien*, that places him upon a vantage ground over a mere general creditor. We do not think it necessary to cite authorities on a proposition so generally understood.

We accordingly reverse the judgment of the circuit court of Butler county, and direct the bill dismissed. All concur.