STEWART *v.* JUSTICES OF ST. CLAIR COUNTY COURT.

*(Circuit Court, W. D. Missouri, W. D.* September 7, 1891.)

1. **MANDAMUS TO COURTS — LEVYING TAXES — SATISFACTION OF JUDGMENT AGAINST COUNTY.**

   Rev. St. U. S. § 916, and rule 84 of the circuit court for the western district of Missouri, providing that a party who recovers judgment in a circuit court shall be entitled to remedies upon execution and otherwise, similar to those provided by the laws of the state in which the court is held, do not authorize *mandamus* to compel the levying of taxes in satisfaction of a judgment against a county, where the laws of the state do not authorize an execution; since *mandamus* is merely an ancillary proceeding, partaking of the nature of an execution.

2. **JUDGMENT—SCIRE FACIAS—LIMITATION.**

   Rev. St. Mo. §§ 6013, 6020, providing that executions may issue upon a judgment at any time within 10 years after its rendition, and that *scire facias* may be sued out at any time within 10 years to revive a judgment, but that none shall thereafter issue, cannot be construed to authorize *scire facias* after the time limited, even though a writ had previously been issued within the time, and returned *nulla bona.*

*Mandamus.*

*John H. Overall,* for plaintiff.

*John A. Gilbreath,* for defendant.

PHILIPS, J. This is a proceeding of *mandamus* to compel the respondents, as justices of the county court of St. Clair county, to make an assessment and levy a tax to satisfy the judgment in this court in favor of relator against the county, predicated of bonds issued by the county in payment of a subscription to aid in the construction of a railroad. To the alternative writ the respondents make return, pleading, *inter alia,* that the judgment on which the original writ was based was rendered

more than 10 years next before suing out the writ. The relator moves to strike out the return, as constituting no reason why the writ should not be made peremptory.

The principal question raised is whether or not the process of *mandamus* may issue when the writ of *fi. fa.* is barred by the statute of limitations. The first insistence of relator is that the writ of *mandamus* is a proceeding *sui juris*, peculiarly adapted to the enforcement of judgments against municipal corporations, and is not subject to the incident of statutes of limitations, applicable to writs of execution. The office of the writ of *mandamus* under a judgment like this is expressed by Dillon in his work on Municipal Corporations, (4th Ed. vol. 2, § 856,) as follows:

"The remedy of the municipal or county bondholder in the federal courts is to sue at law, and obtain a judgment to establish the validity and amount of his debt. Thereupon it is usual to issue execution, if the corporate debtor can by law have property subject to execution. On a return of the writ *nulla bona*, or unsatisfied, application is made upon an information or relation under oath, reciting these facts, for a *mandamus* to compel the levy and collection of a tax to pay the judgment. But if the bondholder is by the statute expressly entitled to a levy of a special tax to pay such judgment, and if the duty of levying it has been neglected or refused, it is not necessary that an execution in such case be returned *nulla bona*, in order to give such judgment creditor the right to a *mandamus*."

The function of the writ in the enforcement of judgments against counties underwent thorough discussion in *Riggs* v. *Johnson Co.*, 6 Wall. 166. It was there held—

"That the writ of *mandamus*, in a case like the present one, is a writ in aid of jurisdiction which has previously attached, and in such case it is a process ancillary to the judgment, and is the proper substitute for the ordinary process of execution to enforce the payment of the same, as provided in the contract. * * * When so employed, it is neither a prerogative writ nor a new suit, in the jurisdictional sense. On the contrary, it is a proceeding ancillary to the judgment which gives the jurisdiction, and, when issued, becomes a substitute for the ordinary process of execution to enforce the payment of the same."

So in *Weber* v. *Lee Co.*, Id. 212, it is said:

"The proper remedy of the judgment creditor in such a case in the state court is by *mandamus*, to compel the proper officers of the county to levy a tax to pay the judgment. Such a creditor, having recovered judgment in the circuit court, is entitled to the same remedy under the process act passed by congress. *Mandamus*, when issued in such a case by the circuit court, is neither a prerogative writ nor a new suit. On the contrary, it is a writ authorized by the 14th section of the judiciary act as necessary to the exercise of jurisdiction which has previously attached."

In *Chanute City* v. *Trader*, 132 U. S. 211, 10 Sup. Ct. Rep. 67, it is said: "A proceeding by *mandamus* to compel the levy of a tax to pay a judgment is in the nature of execution." And, again, in *Harshman* v. *Knox Co.*, 122 U. S. 318, 7 Sup. Ct. Rep. 1171, the court say: "*Mandamus*, as it has been repeatedly decided by this court, in such a case as the present, is a remedy in the nature of an execution for the purpose of collecting the judgment." The power of the federal courts to employ

this writ is subject to the restriction "that the writ and the mode of process must be agreeable to the principles and usages of law." And by this is meant the mode of process employed in the state where the United States circuit court sits. "The intention of congress in passing the process act was that the forms of writs of execution and the modes of process and proceedings in common-law suits in the several circuit courts should be the same as they were at that time in the courts of the respective states. * * * The practical effect of the course pursued was that the forms of writs and executions and the modes of process and proceedings were the same, whether the litigation was in the state court or in the circuit court of the United States." *Riggs* v. *Johnson Co., supra.* So it is provided by section 916, Rev. St. U. S., that—

"The party recovering a judgment in a common-law cause in any circuit or district court shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like cases by the laws of the state in which said court is held, or by any such laws hereafter created which may be adopted by general rules of the said circuit or district court; and such courts may from time to time, by general rules, adopt such state laws as may hereafter be enforced in such state in relation to the remedies upon judgments, as aforesaid, by execution or otherwise."

Rule 34 of the circuit court for this circuit provides that—

"Any party recovering a judgment in any common-law cause in this court shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided by the laws of said state."

The writ of *mandamus* being an ancillary proceeding, and partaking of the nature of an execution, it should follow that if, under the state laws, an execution could not have issued on the judgment at the time this writ of *mandamus* was sued out, the plea to the answer is well made.

This brings us to the second contention of counsel for relator,—that, although the state statute limits the time within which a writ of *fi. fa.* may issue to 10 years after the rendition of judgment, yet, if the writ has once been issued within the 10 years, and returned *nulla bona,* as appears from the writs and returns in this case, another writ may issue after the lapse of the 10 years. In support of this contention we are referred to *Dowsman* v. *Potter,* 1 Mo. 518, and *Clemens* v. *Brown,* 9 Mo. 718, where it was held that, when the writ of execution has been issued and returned not satisfied within the year and a day, an *alias* writ may be issued after the year and day without a *scire facias* to revive the judgment. These decisions were anterior to any statutory limitation respecting the time in which such writ might issue, and were based upon common-law rules. But in the practice act of 1849 (section 2, art. 18, Laws Mo. 1849, p. 92) the legislature enacted that, "after the lapse of five years from the entry of judgment, an execution may be issued only by leave of the court, on motion, with notice to the adverse party. Such leave shall not be given unless it be established by the oath of the party," etc. After this enactment the supreme court, in *Bolton* v. *Landsdown,* 21 Mo. 399, declined to adopt what Judge LEONARD termed "the worn-

out rule," in the case above cited, "in the construction of a new statute, which, after extending the year to five years, prohibits the issuing of any execution after that period, unless by leave upon motion, after notice to the adverse party." The opinion itself does not warrant so much of the syllabus of the court reporter which implies that, if the execution was sued out within five years, an *alias* writ might issue within five years after the first execution. What Judge LEONARD asserted in the concluding part of the opinion was simply that the statute could not be repealed, especially in a case like that, where the execution had been sued out more than five years after the issue of the first; he having in the previous part of the opinion distinctly announced that the court was not at liberty "to defeat the clearly expressed will of the legislature." In the Revised Statutes of 1855 (volume 2, p. 904, § 13) the act of 1849 was changed so as to read: "After lapse of five years, and within ten years from the entry of the judgment, where there is any lien in existence, an execution may be issued only by leave of the court on motion, with notice to the adverse party." In *Turner* v. *Keller*, 38 Mo. 332, it is evident that the court took the same view of the effect of this statute as to the time within which an execution might issue as in the case in 21 Mo. In the General Statutes of 1865 the foregoing provision, in terms, was dropped, and section 11, p. 636, was substituted, as follows: "Executions may issue upon a judgment at any time within ten years after the rendition of such judgment." This is continued in the present statute, (section 6020.) The phraseology of this section is significant. It is not that an execution may issue, but it is in the plural: "Executions may issue upon a judgment." *Alias* and *pluries* writs may issue, but within 10 years, and the act from which the 10 years dates is the rendition of the judgment. Section 6013, Rev. St., declares that "the plaintiff or his legal representative may at any time within ten years sue out a *scire facias* to revive a judgment and lien; but, after the expiration of ten years from the rendition of the judgment, no *scire facias* shall issue." *George* v. *Middough*, 62 Mo. 549, was predicated of this statute, in which the court say:

"Executions can only issue upon a judgment within ten years after its rendition. * * * The statute provides that the plaintiff or his legal representatives may at any time within ten years sue out a *scire facias* to revive a judgment and lien; but, after the expiration of ten years from the rendition of the judgment, no *scire facias* shall issue."

It is true that it does not appear from the case that an execution had issued within the 10 years; but the language of Judge WAGNER leaves no doubt as to what his mind was, for he says: "As more than ten years had expired from the time the original judgment was rendered, the executions were nullities. *Hoskins* v. *Helm*, 4 Litt. (Ky.) 310." It has been the sense and practice of bench and bar in this state ever since these provisions appeared in the statute that a judgment and lien might be continued by a proceeding of *scire facias*, if begun within the 10 years; and that the new judgment would run from the date of the revivor. *Walsh* v. *Bosse*, 16 Mo. App. 231. But, after 10 years without

a revivor, suit must be brought on the judgment within the 20 years, and a new judgment obtained. This is distinctly announced by Judge NORTON in *Ewing* v. *Taylor*, 70 Mo. 398:

"Until the time has elapsed since the rendition of the judgment which the law designates as the period when the presumption of payment may be indulged, such judgment may be enforced either against a judgment debtor by execution, if sued out within ten years after its rendition, and after that time by suit founded on the judgment, if brought within twenty years after its rendition."

See, also, *Mullen* v. *Hewitt*, 103 Mo. 639, 15 S. W. Rep. 924.

With the knowledge this court has of the charter under which the subscription was made for which the bonds were issued, and the serious character of the defense interposed by the county against their validity, ending, after an earnest and protracted contest, in the supreme court, it may well be affirmed that no court would have awarded the writ of *mandamus* against the county to levy a tax for their payment without a judgment first had. The bonds would long since have been barred by the 10-years statute of limitation. The relator's right, therefore, to process being dependent upon a judgment, active and enforceable, it would seem anomalous that when, after the lapse of 10 years, the judgment must be revived by suit thereon before it could be enforced by execution, to yet hold that the original judgment could be enforced at any time within 20 years after its rendition by the writ of *mandamus*, which in this respect is of the nature of an execution, an extraordinary remedy, permitted because the ordinary writ of *fi. fa.* is unavailing. It would make the auxiliary greater than the principal,—the substitute greater than the thing for which it stands. To so hold would be to declare that a judgment creditor of a municipal corporation in respect to his rights is a peculiarly favored litigant, possessing privileges and exemptions over a judgment creditor of an individual debtor. The statute, in my opinion, admits of no such construction. The process by *mandamus* for the enforcement of a judgment ought not to be accorded such special favor, privilege, or exemption.

It results that so much of the motion as seeks to strike out that portion of the return which interposes the plea of the statute of limitations is denied, and the same is sustained as to the other matters set up in the return.