FRANK B. COLEMAN, Trustee in Bankruptcy of Estate of HAGEY STOVE COMPANY, v. HENRY GIVEN HAGEY et al., Appellants.

**Division Two, July 9, 1913.**

1. **TRUSTEE IN BANKRUPTCY: Power of Creditors.** By operation of law the trustee in bankruptcy is vested with the title of the bankrupt to all property transferred by the bankrupt in fraud of creditors, and to all property which, before the filing of the petition in bankruptcy, might have been levied on and sold by judicial process against the bankrupt; and the trustee may avoid any transfer by the bankrupt of his property which any creditor of the bankrupt might have avoided, and may recover the property so transferred or its value. He cannot avoid a transfer unless some creditor by proper proceeding might have avoided it in his own favor.

2. ————: ————: **Suing in State Court: Governed by State Statutes and Decisions.** A trustee in bankruptcy, suing under the provisions of section 70e of the Bankrupt Act, must, if suit is brought in a State court, bring himself within the limits of the pleadings and proof prescribed by the statutes and decisions of the State where the suit is brought. And where suit is brought in a State court, the rulings of its courts as to what complaints creditors might have made to the transfer by a bankrupt of his property are most apposite, and applicable rulings of other jurisdictions, where not in conflict, are strongly persuasive.

3. ————: ————: **No Judgment.** It is a general rule that creditors before obtaining judgments have no such claim or lien upon the property of their debtors as will authorize them to complain of the disposition of the debtor's property, for the reason they may never obtain judgments, and if they do not they cannot be injured by any disposition of the property the debtor may make. And the fact that the debtor is a corporation does not affect the rule.

Coleman v. Hagey.

4. ———: ———: ———: Creditor's Bill: Resort to Equity. If no obstacle prevents a judgment in a suit at law by the creditor against the debtor for the amount of the creditor's claim, a creditor's bill to reach the property conveyed or disposed of by the debtor cannot be maintained. While it is not necessary in all cases that a creditor's demand shall be first put into a judgment, it is essential for him when suing on a creditor's bill to make out a case which shows he has no remedy at law. Before resorting to equity a creditor must first exhaust his legal remedies, whatever they may be.

5. ———: ———: Proof of Claim Makes Claimant Judgment Creditor. Admitting the adjudications of this court that when an assignee in a State insolvency court passes upon and allows a claim, the question involved therein becomes res adjudicata and the assignee's action is final, having all the force, effect and conclusive attributes of a judgment, it is held that claimants before a bankruptcy court upon proof of their claims become thereby judgment creditors, and the trustee in bankruptcy, acting for such claimants, may maintain an action in the nature of a creditor's bill to set aside a fraudulent conveyance, without otherwise reducing the claims of creditors to judgments.

6. ———: ———: Fraudulent Conveyance: Requisites of Creditor's Bill. Claimants who have proved their claims in a bankruptcy court being judgment creditors, a suit in equity to set aside an alleged fraudulent transfer of a corporation's property may be maintained by the trustee, provided the petition alleges and the proof shows that the trustee has no adequate remedy at law, or has exhausted that remedy, and in other respects has conformed to the requirements of a bill in equity. The suit cannot be maintained either at law or in equity as concurrent remedies. Nor is a showing of an exhaustion of legal remedies sufficient; that is a precedent condition, but in addition there must be present some element of jurisdiction clearly set forth in the pleading peculiar to courts of equity for which equitable relief is applicable.

7. ———: ———: ———: ———: Existing Indebtedness. A creditor's bill petition is defective which does not show that the indebtedness existed at the time the alleged fraudulent transfer was made. If the action is by a trustee in bankruptcy against a bankrupt corporation to subject certain property transferred by it to its stockholders to the payment of its creditors' claims, the petition must show that the creditors' claims existed at the time the stockholders divided a portion of the corporate assets among themselves and transferred the remainder either to themselves or others.

8. ————: ————: ————: **Fraudulent Intent: Pleading.** Since the right of the trustee to have a transfer of the corporate properties set aside must be based upon the theory that it was made in fraud of creditors, the fraudulent intent must be one of fact, not constructive, and it must be set forth in a definite manner in the pleading.

9. ————: ————: ————: **·Subsequent Creditors: Fraud Intended as to Them.** As a general rule subsequent creditors cannot attack a transfer of property unless they can show that the fraudulent act was intended towards them, and to make this showing it is necessary to plead it. A general allegation of fraud will not be sufficient, but the facts constituting the fraud must be specifically alleged and proven.

10. ————: **Fraudulent Conveyance: Proof: Existing Debt.** A trustee in bankruptcy, in a suit to set aside a transfer by a corporation to its stockholders of certain money and other property, must prove that the claim upon which the suit is based existed prior to the time of the transfer. It is no concern of the trustee what the corporation and its stockholders did with the property prior to the time claimants became creditors. Proof that defendants, who were the sole directors and stockholders of a corporation, capitalized for $100,000 and which had done a prosperous business for many years, divided up among themselves $50,000 in cash, conveyed to one of their number for the benefit of himself and the other stockholders real estate worth $18,000, and sold the manufacturing plant and stock in trade, including their certificates of stock, for $38,000, to two other persons, at a time when the company had no debts, and thereafter said purchasers became the sole owners of said company and conducted it for two years or more, when it became insolvent and was declared a bankrupt, and that the present claimants became creditors of said corporation long after defendants made said transfer and division of money on hand and sold their stock, is no proof of a fraudulent transfer of properties or a fraudulent appropriation of assets by defendants, and the trustee cannot recover against them, because claimants were not existing creditors at the time the transfer and division of money was made by defendants.

11. ————: ————: **Corporation: Presumption of Extension of Credit on Faith Stock was Fully Paid.** It will not, in the absence of proof, be presumed against defendant stockholders of a corporation capitalized for $100,000, who have divided up its money on hand, and sold the manufacturing plant and its remaining properties for $38,000, that subsequent creditors of the company extended it credit upon the faith and in the belief that it was possessed of an actual capital stock of $100,000 as represented in its articles of incorporation. No such presumption, either in law or of fact, can be indulged in the absence of

proof that such creditors extended credit to the company in reliance upon such belief. The liability of defendants to such subsequent creditors did not constitute a debt such as is created or which the law declares to exist by reason of the failure of shareholders to pay their stock subscriptions in full.

12. ————: ————: ————: Trust Fund. The property of a corporation is never impressed with a trust for the benefit of its creditors until it becomes insolvent. Until then, no general creditor has any lien which may be enforced against the corporate property, no matter when his debt was contracted. And in the absence of a lien, the right of disposition of the corporate property exists untrammeled. Its assets are in no proper sense a trust fund for the benefit of its creditors. While solvent and a going concern, it holds its property like a natural person, free from the touch of general creditors, and may dispose of it as the wisdom of its management dictates, subject only to the provisions of its charter, and those other restrictions upon the conveyance of property which the law imposes upon individuals and corporations alike.

13. ————: ————: ————: Sale of Properties. A private industrial corporation, having no debts or liabilities, upon the approval of all its stockholders, has the unrestricted right to sell or otherwise dispose of all its properties.

14. ————: ————: Decrease of Capital Stock. The statutes regarding the decrease of the capital stock of corporations have no application, where there were no debts at the time the company, with the approval of all its stockholders, divided the money in hand between themselves, and conveyed its real estate to them, and sold the remaining manufacturing plant and stocks to others at a sum much less than the par value of its capital stock.

15. ————: ————: Subsequent Creditors. A subsequent creditor of a corporation cannot complain of a conveyance or transfer of the corporate property, unless it was made with the intent to hinder, delay and defraud subsequent creditors and had such operation and effect; and the burden is on such subsequent creditor to allege and prove such fraud; and the same rule applies to a trustee in bankruptcy, who represents the creditors.

16. ————: ————: Unlike Unpaid Stock Subscriptions. The solvency of the corporation and its freedom from debt at the time it divided up its money on hand among its stockholders and sold its manufacturing plant and certificates of stock to others, distinguish a suit to charge its then stockholders with the amount of the allowed demands of subsequent creditors, from unpaid stock subscription cases, and the trust fund theory announced in them.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

REVERSED.

*R. M. Nichols* for appellants.

(1) Fraud, actual or constructive, is a necessary element to give the trustee in bankruptcy a right of action. The title which passes to the trustee is limited to such property as might have been recovered by creditors in whose right the trustee takes under the law of the State and as may be recovered by him under section 70e of the Bankrupt Act. Blake v. Meadows, 225 Mo. 27; Jardt v. Hub & Spoke Co., 112 Mo. App. 344; Henneman v. Marshall, 117 Mo. App. 546; Parker v. Roberts, 116 Mo. 662; Read v. Smith, 170 Mo. 175; Hood v. Bank, 91 N. W. (Neb.) 705; Warren v. Moody, 122 U. S. 132; Adams v. Collier, 122 U. S. 382; Bank v. Rogers, 67 Fed. 146, 53 Fed. 776; Laughlin v. Calumet & Chi. O. & D. Co., 65 Fed. 441; Brown v. Brabb, 67 Mich. 22; Annis v. Butterfield, 99 Me. 181; Clelland v. Anderson, 66 Neb. 252; Thompson v. Fairbanks, 196 U. S. 516; Bush v. Export Storage Co., 136 Fed. 918; Loveland on Bankruptcy (3 Ed.), sec. 158; Blatchford v. Whitmore, 122 Fed. 359; In re Mullen, 111 Fed. 413. (2) There being no fraud alleged or proven, and from the facts as proven no fraud could be inferred, whether the distribution among the stock holders be held in satisfaction of stock liability or a voluntary conveyance, subsequent creditors cannot complain, and the trustee cannot and does not represent them. Fehlig v. Busch, 165 Mo. 144; Kruger v. Vorhauer, 164 Mo. 156; Johnson v. Murphy, 180 Mo. 597; McMunigal v. Aylor, 204 Mo. 19; Bank v. Thornborrow, 109 Mo. App. 643; Kinealy v. Macklin, 89 Mo. 433; Adams v. Collier, 122 U. S. 382; Warren v. Moody, 122 U. S. 132; Heineman v. Marshall, 117 Mo. App. 546; 2 Morawetz on Corporations, sec. 800; Gra-

ham v. Railroad, 102 U. S. 148; Coe v. Railroad, 52
Fed. 534; Trust Co. v. Railroad, 82 Fed. 656; Porter
v. Steel Co., 120 U. S. 673; Hamilton v. Menominee
Falls Q. Co., 106 Wis. 360; Wilson v. Stephens, 129
Ala. 634; Daily News Co. v. Siegel, 212 Ill. 617; Smith
v. Gaylord, 47 Conn. 380; Eckhart v. Mfg. Co., 236 Ill.
134; Lawrence v. Greenup, 38 C. C. A. 549; Schreyer
v. Scott, 134 U. S. 405.   (3)  The real estate and assets
in question was not ''capital stock;'' it was assets of
the corporation. When withdrawn the corporation
was a ''going concern;'' it had no debts; there being
no insolvency and no fraud the assets were in no sense
a trust fund.   Hagerman v. Railroad, 202 Mo. 264;
Butler v. Harrison, 139 Mo. 467; Bank v. Packing Co.,
138 Mo. 59; Schufeldt v. Smith, 131 Mo. 280; Milling
Co. v. Comm. Co., 128 Mo. 473; Barrie v. United Ry.
Co., 125 Mo. App. 97; Donald v. Williams, 174 U. S.
397; Hollins v. Bergfeld, C. & L. Co., 150 U. S. 371;
Lawrence v. Greenup, 97 Fed. 909; Bank v. Richey,
121 Fed. 956; Bank v. Ward, 111 Fed. 782; Bank v.
Dovetail, 143 Ind. 550; Hospes v. Mfg. Co., 48 Minn.
174; Jewelry Co. v. Valfer, 106 Ala. 205; Worthen v.
Griffith, 59 Ark. 552; Hamilton v. Menominee F. Q.
Co., 106 Wis. 460; Fogg v. Blair, 133 U. S. 541.   (4)
The transaction, so far as concerns this controversy,
was a purchase by the corporation of all of its capital
stock, for which the corporation conveyed the real es-
tate and cash to the Hageys.   The merchandise and
plant were sold to the Robinsons for $38,000.   The
Hagey Stove Company, being an Illinois corporation,
owning no debts, could purchase its capital stock and
subsequent creditors could not complain.   Eggmann
v. Blanke, 40 Mo. App. 318; Chetlain v. Ins. Co., 86
Ill. 220; Railroad v. President, 84 Ill. 145; Clapp v.
Peterson, 104 Ill. 26; Life Ins. Co. v. Swigert, 135 Ill.
150; Bank v. Watch Co., 191 Ill. 128; Marvin v. An-
derson, 111 Wis. 387; Shoemaker v. Lumber Co., 97
Wis. 585; Burns v. Burns, 132 Fed. 485.   (5)  The

directors, who were all the stockholders, had the undoubted authority to withdraw or to sell all of the property of the corporation pursuant to the resolution of November 23, 1905. Jorndt v. Hub & Spoke Co., 112 Mo. App. 344; Richwald v. Hotel Co., 106 Ill. 439; 2 Morawetz on Priv. Corporations, sec. 1004; Moore v. Whitcomb, 48 Mo. 543; 10 Cyc. 1138, 1296; Morisette v. Howard, 62 Kan. 463; Mfg. Co. v. Holmes Mch. Co., 127 N. Y. 252; Ditch Co. v. Zellerbach, 37 Cal. 543; Warfield v. Canning Co., 72 Iowa, 666; Tredwell v. Salisbury, 7 Gray (Mass.), 393; 7 Am. & Eng. Ency. Law, 734; Lauman v. Railroad, 30 Pa. St. 442; Phillips v. Steam Engine Co., 21 R. I. 303; Traier v. Prospecting Co., 124 Iowa, 107; Smith v. Railroad, 24 Ky. 2040; Bank v. Richey, 121 Fed. 956. (6) Under the averments of the petition and admissions in the answer there was left in the hands of the corporation property of the value of $38,000 after the withdrawal of the property in question and at a time when the corporation had no debts. It is permissible for either a person or a corporation to withdraw, by voluntary conveyance, a reasonable proportion of its property from its business. Welch v. Mann, 193 Mo. 304; Johnson v. Murphy, 180 Mo. 597; McMunigal v. Aylor, 204 Mo. 19; Jorndt v. Hub & Spoke Co., 112 Mo. App. 344; Warren v. Moody, 122 U. S. 132; Adams v. Collier, 122 U. S. 382; Bank v. Rodgers, 67 Fed. 146; Schreyer v. Scott, 134 U. S. 405. (7) No one could give credit to the bankrupt on the strength of its owning the property in question, because there was a change of ownership; the recorded deed of November, 1905, followed by possession as tenant was notice of the change of ownership. Hudson v. Cahoon, 193 Mo. 547; Bonney v. Taylor, 90 Mo. 63; Henebery v. Johnson, 95 Ill. App. 537; Graham v. Railroad, 102 U. S. 148; Schreyer v. Scott, 134 U. S. 405; Bank v. Frey, 3 Neb. 83; Marvin v. Anderson, 111 Wis. 387. (8) The corporation was operated by the Robinsons after the withdrawal of

the property in question, as having a capital stock of $100,000; in the sense of the law this was not a false representation; the representation was not made by the Hageys. Webb v. Rockefeller, 195 Mo. 63; Priest v. White, 89 Mo. 609; Patterson v. Franklin, 176 Pa. St. 612; Hindman v. Bank, 112 Fed. 931. (9) The testimony conclusively shows that the Hageys purchased the real estate conveyed by the corporation to H. Given Hagey indirectly and paid the purchase price thereof out of their own funds, taking the title to the same in the name of the Hagey Stove Company. This transaction created a resulting trust, which arises in favor of the defendants as such purchasers and may be shown by parol. Condit v. Maxwell, 142 Mo. 666; Butler v. Carpenter, 163 Mo. 606; Hillman v. Allen, 145 Mo. 603; Weiss v. Heitkamp, 127 Mo. 23.

*Block & Sullivan* for respondent.

(1) The evidence to establish a resulting trust must be so clear, strong and convincing as to banish reasonable doubt. Smith v. Smith, 201 Mo. 574; Bunel v. Nestor, 203 Mo. 465; Derry v. Fielder, 216 Mo. 192. (2) On questions of fact, this court defers to the finding of the chancellor. Craemer v. Bivert, 214 Mo. 479; Huffman v. Huffman, 217 Mo. 191; Jones v. Thomas, 218 Mo. 540. (3) Shareholders of a corporation owe the duty to subsequent creditors to pay in the capital. Van Cleve v. Berkey, 143 Mo. 109; Meyer v. Milling Co., 192 Mo. 188. (4) If shareholders withdraw assets in impairment of capital, subsequent creditors may compel its return. Banking Co. v. Mfg. Co., 168 Mo. 645; Shields v. Hobart, 172 Mo. 516; Davis v. Building Co., 241 Mo. 260; Martin v. Zellerbach, 38 Cal. 307; Williams v. Boyce, 38 N. J. Eq. 364; Mills v. Hendershot, 70 N. J. Eq. 258; Clark v. Machine Co., 151 Mich. 421; Elsworth v. Lyons, 181 Fed. 61; Crandall v. Lincoln, 52 Conn. 73; Baldwin v.

Wolff, 74 Atl. (Conn.) 948; Trust Co. v. Mfg. Co., 75 Atl. (Conn.) 92; Union Trust Co. v. Amery, 120 Pac. 540; In re Assurance Co., L. R. 10 Ch. Div. 118; 2 Morawetz On Private Corp. (2 Ed.), secs. 801, 824. (5) Creditors have the right to extend credit to a corporation on the faith of the fact that its actual capital is equal to its nominal capital. Van Cleve v. Berkey, 143 Mo. 136; Meyer v. Mining Co., 192 Mo. 188; Trust Co. v. McMillan, 188 Mo. 567; Scott v. Abbott, 160 Fed. 580; Palmer v. Bank, 72 Minn. 266. (6) In cases of this nature, the Illinois court recognizes the trust fund theory. Olmstead v. Vance Co., 196 Ill. 241. (7) A corporation cannot purchase its own shares, to the impairment of its capital stock. Banking Co. v. Mfg. Co., 168 Mo. 645; Mfg. Co. v. Hulbert, 24 Mo. App. 343; St. Louis Co. v. Hill, 72 Mo. App. 148; Olmstead v. Vance Co., 196 Ill. 236. (8) Under section 70e of the present Bankrupt Act, a trustee may avoid any transfer which any creditor might have avoided. Warehousing Co. v. Hand, 206 U. S. 418; Bush v. Storage Co., 136 Fed. 921; Blake v. Meadows, 225 Mo. 26; Mfg. Co. v. Mortgage Co., 152 Mo. App. 406; Hanson v. Blake & Co., 155 Fed. 349; In re Mullen, 101 Fed. 415; Bank v. Trustee, 172 Fed. 178; Trust Co. v. Fisher, 67 N. J. Eq. 602; Crane v. Brewer, 68 Atl. (N. J.) 80; Trust Co. v. Amery, 120 Pac. (Wash.) 540; Baldwin v. Wolff, 74 Atl. (Conn.) 948; Mill Co. v. Scale Co., 145 Wis. 77; Thomas v. Roddy, 107 N. Y. Supp. 476; Hood v. Bank, 91 N. W. (Neb.) 705. (9) And the trustee may maintain the action, nothwithstanding there are no creditors with judgments. Hood v. Bank, 91 N. W. 705; Beasley v. Coggins, 48 Fla. 215; Sheldon v. Parker, 66 Neb. 610; Skelton v. Codrington, 185 N. Y. 87; Thomas v. Roddy, 107 N. Y. Supp. 476; Riker v. Gwynne, 116 N. Y. Supp. 10. (10) The complaint with respect to interest in the decree on items of expenses, if it had any foundation, was not so preserved

below as to be reviewable here.  State ex rel. v. Woods, 234 Mo. 25; Maplegreen Co. v. Trust Co., 237 Mo. 364; Anderson v. Caldwell, 242 Mo. 201.

WALKER, J.—This is an equitable proceeding to divest title to certain real property out of defendants and vest it in plaintiff as trustee in bankruptcy of the Hagey Stove Company, a corporation, and for judgment against defendants in the sum of $32,000 of $50,000 in cash claimed to have been taken from the treasury of the corporation by the defendants.  Upon a trial in the circuit court a judgment was rendered in favor of the plaintiff, from which defendants appeal.

*Pleadings.*  The petition alleges the adjudication of the Hagey Stove Company as a bankrupt in the United States District Court for the Eastern Division of the Eastern Judicial District of Missouri, in February, 1908, and the subsequent election of plaintiff as trustee of said estate, and that he qualified and has since been acting as such.  That the Hagey Stove Company was organized under the laws of the State of Illinois in December, 1890, but has always had its plant or place of business in the city of St. Louis in the State of Missouri; that the capital stock of said company is $100,000, and that same was issued as fully paid and non-assessable.  That, at the time, as hereinafter alleged, of the withdrawal of part of the capital stock by defendants, they were the owners of all the shares of said stock, composed its board of directors, were its only officers and had and exercised exclusive control and management of its affairs.

That at the time of the incorporation of said Hagey Stove Company the statutes of Illinois contained provisions forbidding the payment of dividends out of capital stock, and forbidding the decrease of the capital stock of any corporation without notice to the shareholders and after the assent of two-thirds of all

the stock had been given at a meeting of the shareholders that such decrease should be certified to and filed with the Secretary of State and similar action taken in regard to the recorder of deeds of the county, followed by three weeks' public notice of such decrease in a newspaper nearest to such county.

That prior to November, 1905, said corporation purchased certain real estate in the city of St. Louis, Missouri, for $17,000, which is described as per municipal subdivisions.

That in November, 1905, the total assets of the corporation which represented its capital stock of $100,000 was invested in real estate valued at not exceeding $30,000; cash, $50,000; machinery, manufacturing products, raw material, office fixtures, patents and trade marks, aggregate value, $38,000.

That said corporation could not under the laws of either Illinois or Missouri distribute assets among its shareholders in excess of $18,000.

That defendants with a view of taking over or distributing among themselves, individually, the assets of said corporation, conveyed said real estate to one Robert M. Nichols, who thereupon conveyed the same to one of the defendants, Henry Given Hagey, who now holds same in trust for himself and the other two defendants; that defendants, thereupon, divided between them the $50,000 in cash and appropriated same to their own use. Thereafter the total remaining assets of said corporation were $38,000, and the actual capital stock had been reduced to said sum. That no other manner was pursued to reduce the capital stock. That said corporation was permitted to and did continue in business thereafter until its adjudication in bankruptcy under the original articles of incorporation with the representation that it had a full paid capital of $100,000; and in the course of its business, subsequent to the aforesaid transactions by defendants, said corporation incurred and now owes

debts in the sum of $26,209.15, to divers creditors all
of whom extended credit to said corporation on the
faith and with the belief that it had a capital stock
of $100,000, as represented in its articles of incorporation.

That all of said creditors have duly proven their
claims against said bankrupt estate. That plaintiff
is obligated to pay all claims and demands against said
estate so far as he is able to do; that he has converted
into cash all of the assets of said estate save those
herein sued for, and has paid out of the fund collected a dividend of ten per centum of the demands
allowed; that there remains a balance in his hands
of $4740.80, insufficient to pay said demands in full,
without deducting costs and expenses of administration. Then follows a specific allegation as to the costs
and expenses necessary for plaintiff as trustee to pay
in the process of administering the estate, not necessary to be given here; this is followed by the prayer
which we give in its own words: ''Wherefore, the
plaintiff prays that title to the aforedescribed real
property be divested out of the defendants and vested in the plaintiff as trustee of said bankrupt estate,
and that the plaintiff have judgment against the defendants for thirty-two thousand dollars of the fifty
thousand dollars of the money of said corporation, by
them taken as aforesaid, without prejudice, however,
to the rights of said defendants to claim in said bankruptcy court any surplus of said property or fund
after discharging the obligations of said estate and
the expenses of the adminstration thereof; or, in the
alternative that the plaintiff be awarded judgment
against the defendants for the amount of money and
the value of the property by them taken out of the
assets of said corporation in diminution of the capital
stock thereof, and that said judgment be made a lien
and charge upon the real property aforesaid, likewise

without prejudice to the rights of said defendants to claim in said bankruptcy court any surplus thereof after the payment of said demands and the expenses of administration of said estate; or, as a further alternative, that this cause be referred to a referee to ascertain and report the proper expenses of administration of said estate, as aforesaid, and the aggregate of the liabilities thereof, and that a decree be awarded the plaintiff therefor against the defendants and made a lien and charge upon said real property, and that said decree be enforced by a sale thereof, as well as by a general execution against the defendants, and each of them, and for such other and further relief as to the court may seem meet and proper in the premises.''

Defendants' answer is substantially as follows:

That if there is a cause of action stated in the petition plaintiff has an adequate and complete remedy at law for the redress of all of his grievances.

That plaintiff was not nor is he now the assignee of the owner of the real estate described in the petition or the alleged or claimed cause of action stated therein, nor has he ever as trustee of said bankrupt corporation acquired any interest in the premises described in the petition or any right or title thereto, or any right or title either in law or equity to contest or set aside as such trustee in bankruptcy the alleged or claimed transaction or transactions between defendants and said corporation.

Defendants admit the incorporation of the Hagey Stove Company in Illinois, and that it had its place of business in the city of St. Louis, Missouri, where it at all times did business after its organization; that it has been adjudicated a bankrupt as alleged and that plaintiff is its trustee regularly elected and duly qualified, and that this action was brought by plaintiff as trustee under the authority of the referee in bankruptcy; that the capital stock of said corporation was

and is $100,000, and that it was issued as full paid and non-assessable; that on November 20, 1905, defendants owned all of the capital stock of said corporation and constituted the full board of directors and officers of same on said date.

Following this is a general denial of each and every other allegation in said petition.

Defendants further say that on or about November 1, 1905, said corporation was possessed of money, property, goods, chattels and effects of the reasonable estimate and value of $118,000; that on or about said date Henry Given Hagey owned 598 shares, Thomas J. Hagey owned two shares, and Forest Hagey owned 400 shares of the capital stock of said corporation, which was its entire capital stock; that on said date the three Hageys named composed the board of directors of said corporation; that on or about said date, said shareholders and directors as aforesaid resolved to sell the property of said corporation and distribute the proceeds among the shareholders of same in the proportion in which they held its capital stock; that on said date said corporation owed no debts, except its liability upon its stock to its shareholders.

Pursuant to said resolution and on or about the 20th and 23rd days of November, 1905, said directors and shareholders met at the home office of the company in the city of East St. Louis, Illinois, and by agreement held a meeting as hereinafter stated; that on said date and at said meeting the corporation by and through its board of directors passed a resolution to sell all of its stock in trade, merchandise, plant, machinery and appliances, together with the real estate described in plaintiff's petition, and divide the proceeds of the sale, together with the cash on hand, accounts and bills receivable, among the shareholders of the corporation then holding and owning its capital stock; that said resolution was passed by the board of directors and was approved by all of the

shareholders then and there at the time present, who signified their approval by appending the word ''approved'' to said resolution with their signatures; that said resolution with the approval of said shareholders was spread upon the minutes of said corporation and so remains at this time, and was at the date of the creation of the alleged indebtedness of said corporation; and that all parties dealing with said corporation had or could have had by inquiry notice thereof.

That pursuant to the authority given by said resolution said corporation sold to O. E. Robinson and John Morton the merchandise, machinery, and plant of said corporation, excepting, however, the lots of ground and the buildings or buildings upon which the plant was located for the sum of $37,079.01, and in payment therefor these defendants took the individual notes of said Robinson and Morton for said purchase price; that said Robinson and Morton thereupon conveyed the said merchandise, machinery and plant, together with other property of the claimed value of $100,000, to the said corporation, to-wit, the Hagey Stove Company, or invested it with the title thereto and inventoried or scheduled said property and other property upon the books of said corporation as of the value of $100,000, and said corporation proceeded, under the management of said Robinson and Morton, to operate said plant with the merchandise and machinery and other property purchased from these defendants as hereinafter stated, of all which the parties dealing with said corporation had or could by inquiry or investigation have had notice.

That as a means of delivering possession of said merchandise, machinery and plant, as above described, to the said O. E. Robinson and John Morton, defendants as such shareholders assigned and delivered to the said Robinson and Morton all of the certificates of the capital stock of the said corporation, and thereupon these defendants on said November 20, 1905,

resigned their respective positions as officers and directors of said corporation, and said O. E. Robinson and John Morton and one John K. Robinson, 2nd, having become the exclusive shareholders of said corporation elected themselves directors and officers of same and proceeded to operate the plant belonging thereto and continued to operate same for a period of about two years at which time said corporation became insolvent and was adjudicated a bankrupt as averred in plaintiff's petition. That on said November, 20, 1905, they ceased to have any connection with said corporation, or in any manner to act as agents or officers thereof; that after said date the sole control and management of said corporation and the ownership of the capital stock thereof became and was vested in the said O. E. Robinson and John Morton and one John K. Robinson, 2nd, as aforesaid. That on said date the three persons named were by the shareholders of the said corporation duly elected directors and officers thereof, the records of which were all spread upon the minutes of said corporation, constituted a part thereof, and of which after said date to the present time all parties dealing with said corporation had or could have had notice.

That all of the creditors of such corporation who have proved their claims against said bankrupt estate and are represented by the plaintiff herein as trustee, became such creditors long after November 20, 1905, and long after these defendants had ceased to have any connection as officers, agents, directors or shareholders of said corporation, and that the said creditors became such while the said corporation was being conducted under the management and direction of said O. E. Robinson, John Morton and one John K. Robinson, 2nd, and while they were officers, directors and owners of the stock of said corporation and directing its affairs and business; that if plaintiff ever acquired any right to question the transaction

between the defendants herein and said corporation on November 20, 1905, then the creditors whom he represents are all subsequent to said transaction, and could not and did not give said corporation credit upon the ownership of the property which it is alleged to have possessed on the 20th of November, 1905, as aforesaid.

That after the adoption of said resolution authorizing a sale of the assets, merchandise and property of said corporation and a division of the proceeds among themselves as such shareholders, on said November 20, 1905, the officers, directors and all of the shareholders of the said corporation, by agreement, held a meeting at the office of said corporation at the city of East St. Louis, Illinois, and adopted a resolution directing the president of said corporation to convey the real estate described in the petition to Robert M. Nichols, which resolution was approved by the board of directors and all of the shareholders. That on said date said real estate was conveyed to Robert M. Nichols for the express consideration of $18,000 and was subsequently conveyed by him to Henry Given Hagey, one of these defendants; that both of said conveyances were on the 23rd day of November, 1905, recorded in the recorder's office in the city of St. Louis and State of Missouri, and said resolution was spread upon the records of said corporation, and said minutes and records and deeds so recorded became and were notice to all persons having business with said corporation, particularly creditors who became such after the date of said conveyance.

That the property described in the petition was in truth and fact the property of these defendants and was by them in September, 1903, bought from the then owner and paid for out of the individual funds of these defendants, and was by their mutual consent and for their use and benefit conveyed to said corpor-

ation; that the said corporation never at any time paid anything of value for said property, but during the time it held same was in truth and in fact holding it for the use and benefit and in trust for these defendants in the proportion in which they were interested, in the capital stock of said corporation.

To this answer the plaintiff filed a general denial.

*Decree.* Upon a hearing in the circuit court of the city of St. Louis it was adjudged and decreed that the plaintiff as trustee in bankruptcy of the said corporation have and recover from the defendants the sum of $25,855.97, with interest from date at the rate of six per cent per annum, together with all costs. It was further ordered, adjudged and decreed that the judgment and decree above rendered be and constitute a lien in behalf of the plaintiff upon the real estate described in the petition; and that this judgment and decree be enforced by special execution against said property, as well as by general execution against the property of the defendants aforesaid and each of them. From this decree defendants, after complying with the formal procedure necessary thereto, appealed to this court.

There is little controversy between the parties as to the material facts. The Hagey Stove Company was organized under the laws of the State of Illinois in December, 1890, for the manufacture and sale of stoves. It was incorporated for the sum of $100,000, each share being of the par value of $100 fully paid up and non-assessable. Its incorporators were the three defendants, Henry Given Hagey, Forest Hagey, and Thomas J. Hagey. Others were named in the articles of incorporation, but their shares were soon thereafter transferred to defendants, who were in fact the real incorporators. The company commenced business in the city of St. Louis, Missouri, soon after its organization in the year 1890, and continued there

in the manufacture and sale of stoves for almost fifteen years or until about the 20th day of November, 1905, during which time the three defendants were the directors and sole shareholders of said corporation. Its assets in November, 1905, consisted of about $50,-000 in cash, $30,000 in real estate, $7200 in accounts, and $37,079 in machinery, raw material, manufactured product, etc., making an aggregate of $130,279 in assets. The corporation, as is shown by the foregoing, was in a prosperous condition and had no debts or other liabilities: Defendants, determining to go out of business, passed a resolution at a regular meeting of the board of directors with the approval of all of the shareholders, to authorize the transfer. of the real estate of said company to its counsel, Robert M. Nichols, in order that said title might be regularly transferred to Henry Given Hagey, one of the defendants, for the benefit of himself and the other shareholders. In accordance with this resolution the transfer was made to the attorney and by him to the defendant·named. On November 20, 1905, at a special meeting of the board of directors of said company, there being present the defendants who constituted all of the directors and shareholders, it was agreed and formal record entry made thereof, to sell the stock, merchandise, machinery and appliances of said company, and divide the proceeds of said sale, together with any cash on hand belonging to the company, between defendants. Thereupon defendants divided between themselves the cash on hand belonging to the company, took an assignment of the accounts to one of their number, and sold the plant, consisting of machinery, manufactured products, raw material, etc., to O. E. Robinson and John Morton, and defendants thereupon transferred all of the shares of stock of said corporation to the individual purchasers and resigned as members of the board of di-

rectors. The purchasers thereupon transferred the property to the corporation, to-wit, the Hagey Stove Company, and being all of the shareholders proceeded to elect themselves and one John K. Robinson, 2nd, who in the meantime had become a shareholder, as directors and officers of said company. Thereafter said O. E. Robinson, John Morton and John K. Robinson, 2nd, as such officers and directors, had complete control of the affairs of said company and continued under the corporate name in the manufacture and sale of stoves at the factory where the business had formerly been conducted by the company. In other words, all the necessary steps were taken to transfer the property and shares of stock to the purchasers to enable them upon reorganization to continue the business as before, which they did.

A few days after the consummation of the sale of the property, the defendant Henry Given Hagey, to whom the accounts of the company had been transferred, sold same to O. E. Robinson and took his notes in payment therefor.

From November 20, 1905, the date of the sale of the machinery, manufactured product, raw material, etc., to Robinson and Morton, and the transfer of the shares of stock to them, until February 8, 1908, they owned and operated the business and controlled the affairs of the corporation; at the last named date bankruptcy proceedings were instituted in the Eastern Division of the Eastern Judicial District of Missouri, at St. Louis, against the Hagey Stove Company; it was adjudged a bankrupt, and the plaintiff was appointed and qualified as trustee thereof.

All of the claims proved up against the bankrupt estate were for debts incurred by Robinson and Morton for the company long after the transfer of the shares of stock to them and while they were in control and managing the affairs of said company. It is to

secure funds to pay these claims that this suit in equity is brought by the trustee.

The question at issue, therefore, sharply defined, is this: Are directors who constitute the sole share-holders of a solvent, going corporation which has no liabilities, authorized to divide the greater portion of its assets among themselves and sell the remainder, consisting of a manufacturing plant and its machinery, manufactured and unmanufactured product, to others, accompanied by a transfer to the latter of the entire shares of stock of the corporation, free from any liability for debts contracted by the corporation long after the distribution of its assets, the sale of its plant, and the transfer of its shares of stock?

Various questions as to the authority of the trustee and regularity of this proceeding in other respects are presented pro and con by industrious and learned counsel, which will receive consideration as their importance seems to warrant.

I. Sections 70a and 70e of the National Bankrupt Law, 1898 (30 Stat. at L. 565), define the powers of a trustee in bankruptcy; under section 70a he is

Powers of Trustee in Bankruptcy.

vested by operation of law, with the title of the bankrupt to all property transferred by the latter in fraud of creditors, and to all property which, before the filing of the petition, might have been levied on and sold by judicial process against the bankrupt; and by section 70e the trustee may avoid any transfer by the bankrupt of his property which any creditor of the latter might avoid, and may recover the property so transferred or its value. In short, the trustee under these sections is made the legal representative of the creditors and, as was tersely said by LAMM, P. J., in Blake v. Meadows, 225 Mo. l. c. 26: "The estate and

subject-matter being *in custodia legis* the law takes care of the creditor, and the trustee in bankruptcy as the arm of the court acts for and on behalf of the creditor in that particular, so that whatever the creditor might do in avoiding the deed of his debtor for fraud, the trustee in bankruptcy may do under the present Bankrupt Act as a sort of *alter ego*. Such trustee takes title to the bankrupt's property, including that conveyed in fraud of creditors contrary to the terms of the Bankrupt Act, but he takes it subject to outstanding equities. . . . to which the title was subject in the hands of the bankrupt.'' In the recent case of Mayhew, Trustee, v. Todisman, 246 Mo. 288, BROWN, C., speaking for this court, says on this subject: ''While the creditor cannot avail himself of this remedy'' (that of avoiding a transfer by his debtor) ''under ordinary circumstances, without obtaining a judgment at law upon his claim, his right to sue at law being arrested by the petition in bankruptcy, it seems reasonable to permit the trustee to protect the right of which the proceeding might otherwise deprive him, but this subdivision (70e) does not authorize the trustee to avoid a transfer, unless some creditor by proper proceeding might have avoided it in his own favor.'' Citing with approval: In re Economical Printing Co., 110 Fed. 514. In this case the court, after declaring that the Bankrupt Act does not vest the trustee with any better right or title to the bankrupt's property than belonged to him or to his creditors at the time the trustee acquired title, says in effect, that section 70e, which authorizes a trustee to avoid any transfer by the bankrupt of his property which any creditor might have avoided, subrogates the trustee to the rights of the creditors as against liens or transfers which exist at the time of adjudication, but they do not vest him with any additional rights. A trustee, therefore, is not authorized to avoid a transfer unless a creditor might have avoid-

ed it. "These provisions," says the court (l. c. 519), "ought not to be extended by construction to cover cases which are not distinctly within their terms, for the purpose of subverting liens which have originated in good faith, which remained unchallenged at the time of the commencement of the bankruptcy proceedings, and which no creditor of the bankrupt could ever have attacked successfully except at the option of the debtor." A like ruling is announced in In re Mullen, 101 Fed. 413, in which it is said: that a trustee may avoid any transfer by the bankrupt of his property which any creditor might have avoided; this gives the trustee in bankruptcy in respect to the setting aside of fraudulent conveyances made by the bankrupt, only the rights conferred upon the bankrupt's creditors or any of them by the common law or statutory law of the particular State.

The rule announced by the cases on this subject, whether cited by respondents or appellants, is that the power of the trustee in avoiding transfers made by the bankrupt is limited to the powers of the creditors of such bankrupt, or, as was said by LAMM, P. J., in Blake v. Meadows, supra, "Whatever complaint creditors might have made in the absence of bankruptcy, the trustee may make in their behalf." But what complaints may creditors make? Prefatory to a discussion of this question, it is pertinent to say that a trustee in bankruptcy suing under the provisions of section 70e of the Bankrupt Act must, if suit is brought in a State court, bring himself within the limits of the pleading and proof prescribed by the statutes and decisions of the State where the suit is brought. [Kraver v. Abrahams (U. S. Dist. Ct., E. Dist. Pa.), 29 Am. Bk. R. 365; Westall v. Avery (C. C. A.), 22 Am. Bk. R. 673; Halbert v. Pranke, 11 Am. Bk. R. 620; Mueller v. Bruss, 8 Am. Bk. R. 442, 112 Wis. 406; In re Gray, 3 Am. Bk. R. 647; 2 Moore Fr. Con., sec. 19, p. 1205.]

II.  The suit at bar was brought in the circuit court of the city of St. Louis and the rulings of our own courts as to the powers of creditors are,

**Powers of Creditors.** therefore, most apposite, applicable rulings of other jurisdictions being, where not in conflict, of course, strongly persuasive.

It is a general rule that creditors before obtaining judgments have no such claims or liens upon the property of their debtors as will authorize them to complain of the disposition of the debtor's property, for the very good reason that they may never obtain judgments, and if they do not they cannot be injured by any disposition of the property which the debtors may make.  [Humphreys v. Milling Co., 98 Mo. 542; Crim v. Walker, 79 Mo. 335; Fisher v. Tallman, 74 Mo. 39; Mullen v. Hewitt, 103 Mo. 639.]

The fact that the debtor is a corporation does not affect the application of the rule.  If no obstacle prevents a judgment in a suit at law by the creditor against the debtor for the amount of the creditor's claim, a creditor's bill to reach the property conveyed or disposed of by the debtor cannot be maintained. [Ready v. Smith, 170 Mo. 163.]

In the case of the Atlas Nat'l Bank v. Packing Co., 138 Mo. l. c. 94, the court held that as the plaintiff had no lien upon the property of the Packing Company, the latter had the same right to sell or mortgage it as a private person; and the same steps necessary to be pursued by a creditor in order to reach property conveyed or disposed of by the corporation with the intent to defraud its creditors must be pursued by the creditor against the corporation, and before such creditors can in either case maintain a creditor's bill they must show that they have exhausted all remedies at law.

In Parker v. Roberts, 116 Mo. l. c. 662, this court said:  "The rule is well settled elsewhere.  'The creditors of a party defrauded have no right, even though

the fraud has the effect to diminish his means of paying them, to look into such fraud or unravel it. It is for him and him alone to do so, and if he chooses to acquiesce in the fraud, or suffers himself to be concluded of his right to investigate or undo it, his creditors must be content to abide by the legal rights remaining in him.' ''

In Davidson v. Dockery, 179 Mo. 687, it is said that a mere general creditor who has not reduced his claim to judgment and does not show that he has no adequate remedy at law, cannot challenge a deed made by the debtor to others as being in fraud of the right of his creditors. Only judgment creditors and those who have a legal or equitable lien on the property, and under the statutes of this State creditors who have commenced attachment suits against property, can maintain an action to set aside a fraudulent conveyance, and they can do so only when they allege and prove that they have no adequate remedy at law.

While it is not necessary in all cases that a creditor's demand shall be first put in judgment, it is essential for him to make out a case which shows that he has no adequate remedy at law. [Humphreys v. Atl. Mill. Co., 98 Mo. 542; 2 Moore, Remedies Creditors, sec. 23, p. 760.]

In Mullen v. Hewitt, 103 Mo. 639, 650, this court held that it was a general rule that a creditor, before obtaining judgment and execution, has no certain claim upon the property of his debtor and has no concern with conveyances of any kind affecting the latter's property for the reason that if the creditor has not established his claim and may never do so, he cannot be injured by any disposition of the debtor's property; that before resorting to chancery, a creditor must first exhaust his legal remedies, whatever they may be.

In Mellier v. Bartlett, 106 Mo. l. c. 390, this court was asked to review and overrule Mullen v. Hewitt,

103 Mo. 639, and the court did review the rule there laid down, and called attention to the fact that in Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. Rep. 712, the Supreme Court of the United States had also reviewed the question and had arrived at the same conclusion reached by this court in Mullen v. Hewitt, and so refused to overrule the Mullen case.

In Gabbert v. Gas & Traction Co., 140 Mo. App. 6. (Syl. 1, 2 and 4), the St. Louis Court of Appeals has held: "Ordinarily a creditor is not entitled to avail himself of the equity powers of the court to set aside conveyances made by the corporation and place its affairs in the hands of a receiver. Neither the insolvency of a corporation nor the execution of an illegal trust deed gives a mere creditor a lien on the property of the corporation; nor do they charge it with a direct trust. . . . In order for a creditor to reach the property of a corporation which has been conveyed in fraud of creditors, he must show that he has exhausted his remedy at law, or that he has no adequate remedy at law."

The most comprehensive reason for the rules prescribed in the foregoing cases regulating the right of creditors to sue to set aside transfers is that courts of equity are not tribunals for the collection of debts. [Taylor v. Bowker, 111 U. S. 110, 28 L. Ed. 368; Howe v. Whitney, 66 Me. 17; Fleming v. Grafton, 54 Miss. 79.] A further reason, as has been said by one of our Courts of Appeals, is that "a court of equity can only interfere with the general and inherent right of the debtor to dispose of his property at the instance of bona-fide creditors, and it cannot be asserted with certainty that anyone is an actual and subsisting creditor, until a judgment has been obtained on his claim." [Kankakee Woolen Mill Co. v. Kampe, 38 Mo. App. 229, l. c. 234.]

III. The power of the trustee being limited to that of the creditors, the authority of the former to institute suits in equity in the first instance, to set aside transfers of the debtor's property, is, notwithstanding the frequency of these suits in the trial courts, to be gravely questioned unless the trustee has exhausted his legal remedy or is without other adequate remedy or has by a legal action reduced his claim to a judgment, becoming thereby a judgment creditor. In regard to the last condition, this court has held in a number of cases that when an assignee in a State insolvency court passes upon a claim and allows it, the question involved therein becomes *res judicata* and the assignee's action is final, having all the force, effect and conclusive attributes of a judgment; and that one who has obtained an allowance of his claim before an assignee for the benefit of creditors, is a judgment creditor and as such can maintain a suit to set aside the fraudulent conveyance of the assignor. [Eppright v. Kauffman, 90 Mo. 25; Roan v. Winn, 93 Mo. 503, 512; Nanson v. Jacob, 93 Mo. l. c. 344; Kendrick v. Guthrie Mfg. Co., 60 Mo. App. l. c. 27; Deming Co. v. Webb, 76 Mo. App. l. c. 335.] Following the lead of our courts, a like express ruling has been made in one other jurisdiction. [Ruggles v. Cannedy, 53 Pac. (Cal.) 911.]

*Powers of Trustee Limited to That of Creditors.*

The proof of claims before a bankruptcy court being in all respects similar to that before a State court in an insolvency proceeding, and the effect being the same, namely, the finding in each instance of the amounts due claimants, the conclusion seems inevitable that claimants before a bankruptcy court upon proof of their claims become thereby judgment creditors.

Without discussing the question as to the status of claimants who have proved their claims, the Supreme Court of Nebraska held in Hood v. Blair State

Bank, 91 N. W. 701, 705, that a trustee in bankruptcy acting for the creditors may maintain an action in the nature of a creditor's bill to set aside a fraudulent conveyance without reducing the claims of the creditors to judgment, and that this is the only power the trustee has not possessed by the creditors themselves, citing Southard v. Benner, 72 N. Y. 424. This ruling can be sustained only upon the theory that claimants who have proved their claims in a bankruptcy court become thereby judgment creditors as is held by our own courts in regard to like claimants in an insolvency court.

Individually, we have never been impressed with the soundness of this classification as applied to creditors; if proof of claims renders claimants judgment creditors, then each claim proved thereupon becomes a judgment, and it follows that there will be as many judgments as there are claims proved, plus the final adjudication or determination of the entire matter. That these orders of a court, for they are nothing more, in the course of the administration of the estate, are entitled to all the force, effect and conclusive attributes of a judgment rendered after a formal hearing of the entire matter in controversy, is, to say the least, speeding the arrow of judicial interpretation with a lax bow string; judgment creditors, as we understand the terms, are those who have established their claims at law after a formal hearing in a proper tribunal, which hearing is a final determination of the matter submitted; but in view of the phalanx of authorities from our own courts, to the contrary, we may presume too much, and despite our individual convictions we must content ourselves with, "thus saith the court."

IV. Viewed from the vantage ground, therefore, that claimants who have proved their claims in a bank-

ruptcy court are judgment creditors, a **Requisites of a Creditor's Bill.** suit in equity by the trustee is authorized to set aside alleged improper transfers of the corporate property, provided the petition alleges and it is shown that the plaintiff has no adequate remedy at law, or has exhausted that remedy, and in other respects conforming to the requirements of a bill in equity. [Mayhew, Trustee, v. Todisman, supra; Blake v. Meadows, supra; Davidson v. Dockery, supra; Farwell v. Norton, 77 Ill. App. 685; Burne v. Kunzman, 19 Atl. (N. J.) 667.] Failing in this, it may be properly held that the petition does not state facts constituting a cause of action.

It will not suffice to say that an action of this character may be brought either in law or in equity as concurrent remedies, as it appears to have been held by the Kansas City Court of Appeals in Gill v. Ely-Norris Safe Co., 170 Mo. App. 478. If the trustee is entitled to an action at law, he must exhaust it, and having done so his right to proceed further is by a creditor's bill; it is elementary that a creditor's bill is essentially a proceeding in equity by which the creditor, or in this instance the trustee, seeks to satisfy his debt out of some equitable estate of the debtor which is not liable to levy and sale under execution at law or out of some property which has by the debtor been put beyond the reach of ordinary process.

As a general proposition, the basis of jurisdiction of a court of equity in a creditor's bill is not confined to the exhaustion of legal remedies; the latter, it is true, is a condition precedent to the exercise of equitable jurisdiction (Imp. Co. v. Jones, 143 Mo. l. c. 278), but, in addition, there must be present some element of jurisdiction clearly set forth in the pleading peculiar to courts of equity for which equitable relief is applicable. [Board of Public Works v. Columbia College, 84 U. S. 521.]

All the material facts upon which the plaintiff in a creditor's bill relies for relief must be so distinctly alleged as to put them in issue. [St. Louis & San Francisco Railroad Co. v. Johnston, 133 U. S. 566, 577.] For example, a petition is defective, which does not show that the indebtedness existed at the time the transfer complained of was made, or, in other words, the pleading must show that the creditor's claims, in this instance against the corporation, existed at the time the defendants divided a portion of the assets and transferred the remainder of the property. [Adsit v. Butler, 87 N. Y. 585; Donley v. Mc-Kiernan, 62 Ala. 34; Merrell v. Johnson, 96 Ill. 224.]

In Implement Co. v. Jones, 143 Mo. l. c. 278, this court said: "Defendants contend that the petition states no cause of action, in that it does not allege the insolvency of either of the judgment debtors, that any effort was made to collect the judgments by execution, or that the plaintiff has no remedy at law. It may be conceded that 'one seeking aid in a court of equity must, as a general rule, first exhaust his remedies at law.' . . . Under this well established rule the petition in the case in hand states no cause of action, for it does not show that plaintiff had exhausted its remedies at law." The rule is uniform that in a proceeding by a creditor he must allege and show that he has no adequate remedy at law, because, if he has, the aid of a court of equity is unnecessary and will be denied.

When it is said, therefore, that a creditor must show that he has no adequate remedy at law before he can be heard in equity to attack a fraudulent conveyance only a fundamental rule in equity is announced and that which applies to all sorts of creditors. [Davidson v. Dockery, supra.]

The proceeding in the concrete case must of necessity be based upon the theory, although it is not pleaded, that the transfer sought to be set aside or

title divested, was made in fraud of creditors. If the transfer and appropriation of the property was not fraudulent, the trustee is not entitled to recover. [Smith v. Reid, 134 N. Y. 568; Kain v. Larkin, 131 N. Y. 300.] Where the complaining creditors are subsequent to the conveyance, the fraudulent intent must be one of fact, not constructive, and it must be set forth in a definite manner in the pleadings. [Underleak v. Scott, 28 Am. Bk. R. (Minn.) 926, 930; Wilson v. Stevens, 129 Ala. 630; Loveland on Bankruptcy (3 Ed.), sec. 158; 1 Remington, Bankruptcy, secs. 1216 and 1217.] Two things are necessary to be averred to impeach a transfer as fraudulent: first, that the transfer was made to defraud creditors, and, second, that they were creditors at the time of the conveyance. [Shackleford v. Todhunter, 4 Ill. App. 271.] Otherwise, how could they be injured by the alleged fraudulent conveyance? [Merrell v. Johnson, 96 Ill. 224.] The general rule, and it is founded upon reason, is that subsequent creditors cannot attack a transfer of property unless they can show that the fraudulent act was intended towards them, and to make this showing it is necessary to plead it. Here and elsewhere a general allegation of fraud will not be sufficient, but the facts constituting the fraud must be specifically alleged and shown. [Reed v. Bott, 100 Mo. 62; Burnham v. Boyd, 167 Mo. 185; Van Weel v. Winston, 115 U. S. 228; Wood v. Amory, 105 N. Y. 278; Knapp v. Brooklyn, 97 N. Y. 520; Smith v. Wood, 42 N. J. Eq. 563.] It is stated generally in Woodman on Trustees in Bankruptcy, sec. 358, p. 589, that one of the requisite allegations to be made in a petition to divest title out of defendants and vest it in a trustee, is "that the bankrupt was indebted at the time of the transfer to unsecured creditors (unless the transfer was made in pursuance of a scheme to defraud subsequent creditors), and that the transfer was made by the bankrupt to hinder, delay or defraud his credi-

tors.'' The plaintiff's petition contains neither of these allegations.

From all of the foregoing in regard to the requisites of a creditor's bill, we are of the opinion that the plaintiff's petition does not state a cause of action.

V. But waiving the conclusion as to the sufficiency of the petition for the time being, are the facts proved sufficient to authorize a decree in **Proof Required.** plaintiff's favor? A trustee in bankruptcy in prosecuting a suit to judgment must prove the facts essential under the State law, since to hold otherwise would be but to decide that he could recover without proof of his right to do so    (Miller v. Acid & Fertil. Co., 211 U. S. 496, 21 Am. Bk. R. 416); and in a proceeding to set aside a conveyance or divest title it is necessary to prove that the claim upon which the suit is based, existed prior to the time of the conveyance. [Stone v. Myers, 9 Minn. 303.] It is no concern of the trustee's what the defendants may have done or did with their property prior to the time claimants became creditors; as to them, defendants may have given away their property or conveyed it away (with no matter what purpose) and only those creditors who became such before the fraudulent conveyance, have a right to complain, hence the necessity of showing the existence of the claim prior to the conveyance. [Bloom v. Moy, 43 Minn. 397.]

It is alleged in plaintiff's petition that after the sale of the manufacturing plant to Robinson and Morton for $38,000, and the transfer of the shares of stock to them by defendants that ''said corporation was permitted to, and did, continue in business thereafter, and until the filing of the petition for adjudication of bankruptcy aforesaid, under the original articles of incorporation containing the representation that it was possessed of a full paid capital of one hundred thousand dollars; and in the course of which business,

and subsequent to the transactions aforesaid of the defendants, said corporation incurred, and now owes, liabilities in various and sundry amounts aggregating twenty-six thousand two hundred and nine dollars to divers and sundry creditors, all of whom extended credit to said corporation on the faith and with the belief that it was possessed of an actual capital stock of one hundred thousand dollars as represented aforesaid in its articles of incorporation, and all of whom have duly proven their claims and had the same allowed against said estate in said bankruptcy proceeding." If it is intended by this allegation to charge that defendants are liable to these subsequent creditors who extended credit to the corporation long after defendants had severed their connection therewith, relying upon the alleged representation that it then had a paid up capital of one hundred thousand dollars, proof should have been offered to support the pleading. There is nothing in the testimony to show that any creditor loaned money or in any way extended credit to said corporation, relying upon any fact in regard to its capital stock. Leaving out of consideration for the nonce the question as to whether the defendants can under the circumstances be held liable to these creditors for whatever reliance the latter may have placed in the representations, express or implied, of the corporation at the time their debts were created, there is no presumption of law or of fact which requires us to consider this allegation in the absence of proof. [Ketchum v. Duncan, 96 U. S. 659, 666; The Howard Carroll, 14 U. S. App. 506; In re Harris, 57 Fed. 243, 246, 6 C. C. A. 320.] The alleged liability of defendants as set forth in plaintiff's petition did not constitute a debt such as is created or which the law declares to exist by reason of the failure of shareholders to pay stock subscriptions in full, as was the case in Van Cleve v. Berkey, 143 Mo. l. c. 136, Trust Co. v. McMillan, 188 Mo. l. c. 567, and other cases; the

nature of the obligation in these cases authorized the presumption without proof, that creditors dealt with the corporation on the faith that its stock was paid in full. Defendants' alleged obligation not being in the nature of a debt as is conceded by plaintiff's pleading and the character of proof offered to sustain the issue in other respects, no presumption arises in regard to the faith reposed by creditors in the corporation when they dealt with it, and the allegation in regard thereto should have been supported by proof to entitle it to consideration.

VI. It is conceded that the capital stock was fully paid up at the time of the organization and during the control and management of the corporation by defendants; and that at the time of the sale of the manufacturing plant and the transfer of the shares of stock, the corporation was not only solvent, but prosperous, and had no liabilities of any character. Notwithstanding this condition, it was held by the trial court that "the assets of the corporation as of the time of defendants' connection therewith constituted a trust fund, to which the creditors, no matter when their debts were contracted, were entitled to insist upon remaining substantially intact for the satisfaction of their claims." An examination of the authorities upon which the doctrine of a trust fund, as applied to the capital stock of a corporation, is based, will determine whather the findings and consequent decree of the court below are correct.

The Trust Fund Theory.

The origin of the trust fund doctrine is to be found in Wood v. Dummer, 3 Mason, 308, Fed. Case No. 17944, in which Justice STORY held that the capital stuck of a corporation constituted a trust fund for the payment of its debts. The occasion of the ruling was to compel shareholders who had divided three-fourths of the capital stock of a corporation among them-

selves, without providing funds to pay its then existing obligations, to pay same out of the funds thus appropriated by them. The doctrine announced in this case was pushed to an extreme in the Federal courts and in many State courts of last resort, never contemplated by its originator. This line of cases held unqualifiedly that the capital stock of a moneyed corporation was a trust fund for the payment of its debts of which the directors were the trustees; that the trust was to be managed for the benefit of the shareholders during the life of the corporation and for that of its creditors in the event of its dissolution. The modern theory, however, evolved after much reasoning in many courts, as to the manner in which a corporation holds its property, is that its assets are in no proper sense a trust fund for the benefit of creditors; that while solvent and a going concern it holds its property like a natural person, free from the touch of general creditors, and that it may dispose of same as the judgment or wisdom of its management dictates, subject only to the provisions of its charter and those other restraints upon the conveyance of property which the law imposes as well upon individuals as upon corporations. This court and our courts of appeals have repeatedly recognized the correctness of this modern doctrine, and the reasoning in support of same will be found upon reference to the Missouri cases here cited, thus avoiding lengthy quotations from same. [Hageman v. Railroad, 202 Mo. l. c. 264; Natl. Bank v. Moran Packing Co., 138 Mo. 59; Milling Co. v. Com. Co., 128 Mo. 473; Butler v. Land & Mining Co., 139 Mo. 467; Schufeldt v. Smith, 131 Mo. 280; Barrie v. United Railways Co., 125 Mo. App. 96.] Fox, J., in the Hageman case, supra (l. c. 265) after quoting from Hollins v. Brierfield, etc., Co., 150 U. S. l. c. 385, says: "We have been unable to find a single case supporting the trust fund theory, except where the corporation was insolvent, or where it had disposed

of its property for the purpose of defrauding its
creditors, or where a dissolution of the corporation
had taken place and the assets placed in the hands of
a trustee for the payment of debts, etc., or where it
had no power or authority whatever to make the sale
or transfer of its property." In McDonald v. Wil-
liams, 174 U. S. 397, 43 L. Ed. 1022, the court said:
"The complainant bases his right to recover in this
suit upon the theory that the capital stock of a cor-
poration was a trust fund for the payment of creditors
entitled to a portion thereof, and having been paid in
the way of dividends to the shareholders that portion
can be recovered back in an action of this kind for the
purpose of paying the debts of the corporation.
. . . We think the theory of a trust fund has no
application to a case of this kind. When a corpora-
tion is solvent, the theory that its capital is a trust
fund upon which there is any lien for the payment of
its debts has in fact very little foundation. No gen-
eral creditor has any lien upon the funds under such
circumstances, and the right of a corporation to deal
with its property is absolute so long as it does not
violate its charter or the law applicable to such cor-
poration."

Justice Brewer in Hollins v. Brierfield Co., su-
pra, said that while a corporation remains solvent it
holds its property in the same manner as a natural
person, free from the touch of the creditor who has
acquired no lien, and free from the stockholder; al-
though he has an equitable interest in it, he has no
legal title to its property; that when the corporation
becomes insolvent its assets are placed in a condition
of trust, first for the creditors and then for the stock-
holders; that this trust is rather in the administra-
tion after a court of equity has taken possession than
a trust attaching to the corporate property for the di-
rect benefit of either creditor or stockholder.

JUSTICE BRADLEY in Graham v. Railroad, 102 U. S. 148, 161, said: "When a corporation becomes insolvent, it is so far civilly dead, that its property may be administered as a trust fund for the benefit of its creditors and stockholders. A court of equity . . . will then make those funds trust funds which, in other circumstances, are as much the absolute property of the corporation, as any man's property is his."

Justice GRAY, in Wabash, St. L. & Pac. Railway Co. v. Ham, 114 U. S. 587, 594, said: "The property of a corporation is doubtless a trust fund for the payment of its debts, in the sense that when the corporation is lawfully dissolved and all its business wound up, or when it is insolvent, all its creditors are entitled in equity to have their debts paid out of the corporate property before any distribution thereof among the stockholders. It is also true, in the case of a corporation, as in that of a natural person, that any conveyance of property of the debtor, without authority of law, and in favor of existing creditors, is void as against them."

Judge THAYER in N. H. Sav. Bank v. Richey, 121 Fed. (C. C. A.) 956, l. c. 959, said: "No such relation as that of trustee and *cestui que trust* exists between a corporation and its general creditors. So long as a corporation is solvent, and remains in control of its property and assets, it may deal therewith and dispose of the same like an individual, subject only to such limitations upon its powers as may have been imposed by its charter. The general creditors of a corporation are not, like the beneficiaries in trust, the equitable owners of the corporate property, nor have they any greater interest therein than the creditors of natural persons have in the property of their debtors. Creditors of both kinds are entitled to insist that their debtors shall not make a voluntary or otherwise fraudulent conveyance of their property; but beyond this, in the absence of an express lien created by con-

tract, they have no interest, legal or equitable, in their debtor's property, or right to control that free disposition of the same which is incident to ownership. It is true that when a corporation becomes insolvent such an event places its property from that time forward in such a condition of quasi-trust that it must be applied first to the payment of its corporate debts before there can be any distribution among stockholders.''

Judge LURTON in Lawrence v. Greenup, 38 C. C. A. 546, 97 Fed. 906, in which it was sought by a receiver to recover a dividend declared out of the capital stock of a corporation, said: ''The claim of the receiver is based upon the theory that a dividend paid out of capital stock was wrongfully paid out and received, and that the liability to repay such dividend constitutes an asset of the bank, which can be recovered in a suit at law. . . . When the dividend complained of was declared and paid, the bank had ceased its 'banking operations.' It had gone into voluntary liquidation for the express purpose of returning its capital to its shareholders, after paying its debts. . . . The suit can only be predicated upon the proposition that the capital of the bank was a trust fund for the payment of debts, and that any part of the trust fund so paid out in the way of dividends to the stockholders can be recovered back in an action at law of this kind, for the purpose of paying the debts of the bank. . . . Under the decisions of the courts of the United States, there is no solid foundation for the contention that the capital of a corporation which is solvent is a 'trust fund' upon which there is any lien for the payment of corporate debts. The capital of a solvent corporation is as much the absolute property of the corporation as is the property of an individual. Neither a corporation nor an individual can so exercise the power of disposition over that which is possessed as to fraudulently

defeat the just demands of creditors. But neither the individual nor the corporation can be said, in any accurate sense, to hold his or its property subject to any trust in favor of creditors. . . . The fact that this bank was in liquidation does not materially affect the situation. The corporation was still in the absolute control of its assets, and its power of disposition was unaffected. . . . If the bank was not insolvent when this dividend was declared or paid, and the division of a portion of the assets did not reduce the bank to a condition of insolvency, on what theory can it be maintained that the bank, or the receiver subsequently appointed, could maintain an action at common law upon implied promises to return the dividend so paid and received? . . . If this dividend was paid in good faith at a time when the assets were abundantly sufficient to justify such a return of capital without depriving existing creditors of a fund ample to pay their dividends, it is difficult, under the doctrine of the cases we have cited (McDonald v. Williams), to see any ground upon which the stockholder can be held to refund.''

Judge ADAMS in American Exchange Nat. Bank v. Ward, 111 Fed. 782, said: ''Notwithstanding a contrariety of opinion on the subject, it is now, we think, established by persuasive and controlling authority that the insolvency of a corporation does not *ipso facto* transform its assets into a trust fund for the equal benefit of its creditors. This conclusion is reached in a number of decisions by the Supreme Court of Missouri, in which State the transactions involved in this suit occurred.''

Of like import are Cole v. Millerton Iron Co., 133 N. Y. 164, 28 Am. St. 615; Great Western M. & M. Co. v. Harris, 128 Fed. 321; Fogg v. Blair, 133 U. S. l. c. 541; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371; Nat'l Bank v. Dovetail B. & G. Co., 143 Ind.

550; Bank of Montreal v. Potts S. & L. Co., 90 Mich. 345; McClaren v. Roller Mill Co., 95 Tenn. 696.

Precedents are only valuable in so far as they announce definite rules for guidance in future similar cases. There seems to be no contrariety of opinion in regard to the conditions under which the trust fund theory may properly be applied to the capital stock of corporations. The foregoing well considered decisions of our own and other courts of last resort, clearly announce the principle that the property of a corporation is never impressed with a trust until it becomes insolvent; that until this event happens, no general creditor has any lien which may be enforced against the corporate property no matter when his debt was contracted; and in the absence of a lien, the right of disposition of the corporate property, which we will discuss hereafter, exists untrammeled.

VII. Free from the impress of a trust or lien, as is the property of a solvent business corporation, its right to dispose of its property in such manner as it chooses, subject, of course, to regulatory statutes, would seem to follow as a natural consequence of unrestricted ownership, the one being the correlative of the other. In many of the cases we have heretofore discussed defining the trust fund theory the right to dispose of assets has been declared as one of the attributes of solvent corporate existence. Authorities expressly in support of the right are, however, numerous and conclusive.

A certain class of corporations are excepted from the rule authorizing them to sell their assets, the exception and the rule being clearly stated in an early Massachusetts case as follows: "Corporations established for objects *quasi*-public, such as railway, canal and turnpike corporations, to which the right of eminent domain and other large privileges are granted

in order to enable them to accommodate the public, . . . and also charitable and religious bodies, . . . may perhaps be restrained from alienating their property, and compelled to appropriate it to specific uses. . . . But it is not so with corporations of a private character, established solely for trading and manufacturing purposes. Neither the public nor the Legislature has any direct interest in their business or its management. These are committed solely to the stockholders, who have a pecuniary stake in the proper conduct of their affairs. By accepting a charter, they do not undertake to carry on the business for which they are incorporated, indefinitely, and without any regard to the condition of their corporate property." [Treadwell v. Salisbury Mfg. Co., 7 Gray (Mass.), 393, 404.]

The St. Louis Court of Appeals, speaking through GOODE, J., in Jorndt v. Hub & Spoke Co., 112 Mo. App. l. c. 344, said: "When there are no stockholders except the directors and officers, the latter may, if they wish, give away an asset by unanimous consent, and the gift will be good, unless the rights of creditors are impaired. All the stockholders of a corporation may consent to an appropriation of an asset by an official if the appropriation would not be detrimental to creditors." The rule announced in the singular number in this case would be equally true if stated in the plural in reference to the assets.

Justice SHELDON of the Supreme Court of Illinois in Reichwald v. Hotel Co., 106 Ill. 439, said: "But it is claimed that the board of directors did not have the power to dispose of all its property, and thus destroy the corporation. The effect of this transfer of all the hotel property no doubt was to terminate the business of the corporation; but that was not the necessary effect. It is entirely clear, upon the authorities, that the disposal of all of the property of a corporation has not the effect to end or dissolve the cor-

poration." It is not inappropriate to state in connection with this ruling that the corporation in the case at bar was organized under the laws of the State of Illinois.

Judge HAIGHT in a New York Court of Appeals case of Holmes & Griggs Mfg. Co. v. Holmes & Wessell Metal Co., 127 N. Y. 252, said: "The plaintiff had the right, with the consent of its stockholders, to sell its plant and retire from business; and it appears from the evidence in this case that the consent of all the stockholders was given to the sale that was made. . . . Inasmuch as this was done with the consent of all of the stockholders, it being the act of a private corporation, not in any manner harming the public, we see no reason for condemning its title to the stock so obtained." And the rule is clearly stated in the 7 Am. & Eng. Ency. Law, p. 734, as follows: "And by the weight of authority, both in England and in the United States, a strictly private commercial corporation, owing no particular duties to the public, may, with the consent of all the shareholders, and in the absence of express or implied restrictions in its charter, or prejudice to the rights of creditors, transfer all of its property to another corporation or person, if the latter is capable of taking. And it may do so, even though the effect may be to render it incapable of further carrying on its business."

In the late case of Mooreshead v. United Rys. Co., 203 Mo. 121, this court speaking through GRAVES, J., said that where there is no bar in the statute or corporate articles, a solvent corporation may dispose of its assets as it may deem to its advantage, the same as a natural person. We find no variance from or exceptions to this rule or right of corporations under the conditions stated, either in texts, treatises or adjudicated cases. Without further burdening this opinion with quotations it may be said generally that the following cases affirmatively announce the unrestricted

right of solvent corporations which have no liabilities to dispose of their capital stock in such manner as they deem proper. [Brown v. Schleier, 194 U. S. 18; People ex rel. Elec. Co. v. Barker, 141 N. Y. 251; Carr v. Rochester Tum. Co., 207 Pa. St. 392; Stockton v. Am. Tob. Co., 55 N. J. Eq. 352; Miller v. Am. Tob. Co., 56 N. J. 847; Rochester R. R. Co. v. Rochester, 205 U. S. 236, 256; Willamette Mfg. Co. v. Bank, 119 U. S. 191, 198; Great Western M. & M. Co. v. Harris, 128 Fed. 321.]

Not only do solvent corporations without liabilities have the unrestricted right with the approval of their shareholders, to dispose of their assets, but they may also sell and transfer their charters or corporate franchises and vest same in others. The sale and transfer in such cases is, in legal effect, but a surrender or abandonment of the old charter by the corporation and a grant *de novo* of the charter to the transferees or purchasers. [State ex rel. v. Sherman et al., 22 Ohio St. 411; 1 Wilgus on Corporations, p. 1082.] The right of disposition of either assets or franchises of a corporation, is, as to their effect, to be measured by the following rules: 1st, the character of the sale and transfer is to be determined by the circumstances existing at the time it took place (McColc v. Loehr, 79 Ind. 430); 2nd, if a grantor remains solvent after the sale and transfer of its assets, and has sufficient property left to pay all of its then existing debts, its conveyance cannot be regarded as a fraud upon creditors (Kain v. Larkin, 131 N. Y. 300, 307); 3rd, one assailing a transfer assumes the burden of showing that it was made in bad faith and that it left the grantor without ample property to pay its then existing debts. [Nevers v. Hack, 138 Ind. 260; Holden v. Burnham, 63 N. Y. 74; Pence v. Croan, 51 Ind. 336.]

VIII.  The statutes in regard to the decrease of capital stock of a corporation have, in our opinion, no application, under the facts, to the case at bar; such statutes are intended primarily for the protection of creditors.  Here, there were no creditors at the time of the sale and conveyance complained of, nor for a long time thereafter.  The stock having been fully paid up, the funds arising therefrom became assets of the corporation (Sawyer v. Hoag, 84 U. S. (17 Wall.) 610; Hill v. Silvey, 81 Ga. 500, 3 L. R. A. 150), which being solvent held its property free from the impress of any trust, with the right of unrestricted disposal.  Under these circumstances, if the subsequent insolvency of the corporation created a trust in its property for the benefit of its creditors, the impress of such trust did not extend beyond the beginning of the corporation's insolvency which occurred more than two years after the conveyance complained of.  The transaction, therefore, which the plaintiff denominates a decrease in the capital stock, could not upon any reasonable interpretation of the facts have remotely influenced the corporation's subsequent insolvency and it did not.  It, therefore, should not be considered in determining as to defendant's liability.

*Decrease of Capital Stock: Statute Does Not Apply.*

IX.  The trustee represents in this proceeding only subsequent creditors, i. e., those who extended credit to the corporation or whose claims were created against it long after the transaction by defendants of which plaintiff complains.  As a general rule subsequent creditors cannot attack a transfer unless they can show that the fraudulent intent was intended towards them; or, as is held by the Supreme Court of Alabama, "a subsequent creditor of a corporation cannot complain of the

*Subsequent Creditors.*

conveyance or transfer of the corporate property, unless such conveyance or transfer was made with the intent to hinder, delay and defraud subsequent creditors, and had such operation and effect; and in such case the burden is on the subsequent creditor seeking the relief to allege and prove such fraud.'' [Wilson v. Stevens, 129 Ala. 630, (Syl. 1).] There is nothing in the case, under consideration, to relieve the trustee who represents the creditors, from the requirements of the rule stated.

X. The authorities cited by respondent and relied upon by the trial court to sustain the decree rendered, are found, upon examination, to be

Unpaid Stock Subscription Cases.

stock subscription cases, in which the facts are unlike those in the case at bar, and therefore different rules of construction are applicable thereto. In this class of cases it is held that a creditor deals with the corporation upon the assumption that its stock is fully paid up, and if not paid and the corporation becomes insolvent, the unpaid portion is, with the other assets, impressed with a trust for the payment of the claims of existing and subsequent creditors; or, to state the proposition somewhat differently and to our mind more satisfactorily: a creditor deals with a corporation relying upon the belief that the stock has been fully paid up; if unpaid, the liability is in the nature of a debt due the corporation by the shareholder whose delinquency becomes a fraud upon the creditor for which the latter has the right of redress in a proper tribunal. [Hospes v. N. W. Mfg. Co., 48 Minn. 174, 15 L. R. A. 470.] The following may be properly denominated stock subscription cases: Van Cleve v. Berkey, 143 Mo. 109; Shields v. Hobart, 172 Mo. l. c. 516; Meyer v. Mining & Milling Co., 192 Mo. l. c. 188; Chrisman-Sawyer Banking Co. v. Mfg. Co., 168 Mo. 634; Davis v. Realty

& Bldg. Co., 241 Mo. l. c. 260; and Hunter v. Garanflo, 246 Mo. 131.

The solvency of the corporation and its freedom from debt at the time of the transaction complained of by plaintiff, preclude the application of the trust fund theory and render the plea of a fraud upon creditors, who did not exist, impossible; these are facts ample to distinguish the case at bar from unpaid stock subscription cases and to authorize the application of different rules of construction in determining defendant's freedom from liability in the matter at issue.

In view of the foregoing conclusions the judgment of the trial court should be reversed and the suit dismissed. It is so ordered. *Brown, P. J.,* and *Faris, J.,* concur.